**Noah ROGERS, Plaintiff,**

v.

**M/V RALPH BOLLINGER and B & B Towing Company, Inc., Defendants.**

**Civ. A. No. 67–169.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 1, 1968.

Philip E. Henderson, Houma, La., for plaintiff.

T. C. W. Ellis, New Orleans, La., for defendants.

Richard J. Meunier, New Orleans, La., for George Bollinger and Richard Bollinger.

RUBIN, District Judge:

A ship under construction, launched and lying in navigable waters, but not yet completed, is not a vessel in navigation. Hence a shipyard worker injured aboard it is not entitled to a warranty of seaworthiness. But it is afloat, and accidents happening on it occur on navigable waters. Therefore, the admiralty jurisdiction of this Court extends to tort claims arising from such accidents. Thus, insofar as the shipyard worker in this case is concerned, this Court has jurisdiction in admiralty of his claim that the owner of the vessel and the owner's officers were negligent; but judgment must be granted against him with respect to any claim based on unseaworthiness. These conclusions arise from the following facts:

Noah Rogers was employed by Bollinger Machine Shop & Shipyard, Inc. (The Shipyard) as a "helper." The Shipyard was building a tug, THE RALPH BOLLINGER, for B & B Towing Company, Inc. The hull had been finished and it had been launched. The construction of the ship was nearing completion. About 1000 man hours of work remained to be done. This included connecting the fuel and exhaust systems to the engine, hooking up the power generator, installing steering and engine controls, and miscellaneous electrical and joiner work. The tug had not had a shake down cruise, nor had it been delivered to or accepted by B & B. However a certificate of enrollment and license had been issued for the tug by the Treasury Department indicating that it was owned by B & B Towing Company, Inc.

On October 12, 1965, while Rogers was testing a tank aboard the tug, the tank exploded and he was injured.

His claim against The Shipyard is of course controlled by the provisions of the Longshoremen and Harbor Workers' Act [1] and he has no right to recover from it either for unseaworthiness [2] or for negligence. [3]

Rogers claims damages from B & B on the basis that he was injured as a result of unseaworthiness of the tug and negligence of "its officers, agents and employees." B & B's underwriter is joined as a defendant and it is alleged that its policy covers the liability of B & B's officers. B & B moved for summary judgment. Some of the material facts or the inferences to be drawn from them were disputed, so the Court denied the motion for summary judgment, but severed for trial the issues relating to *whether the plaintiff was entitled to the warranty of seaworthiness.*

 Neither the fact that THE RALPH BOLLINGER was afloat in navigable waters nor the fact that a certificate of enrollment and license had been issued to it gives a shipyard worker the benefit of the warranty of seaworthiness. The owners of a vessel owe seamen "the duty of furnishing a seaworthy vessel and safe and proper appliances in good order and condition." [4] That duty extends not only to seamen, but to longshoremen and other harbor workers as well, provided that the work they are performing is work customarily performed by a ship's crew. [5]

 The warranty of seaworthiness is imposed because, "A ship is an instrumentality full of internal hazards aggravated, if not created, by the uses to which she is put." [6] Originally, it merely gave a seaman a privilege to leave the service of the ship without forfeiting his wages or becoming a deserter. [7] The doctrine was expanded to give seamen the right to recover for personal injuries, [8] but the warranty of seaworthiness is imposed only upon vessels in navigation. [9] The owner of an object that is a vessel does not ipso facto warrant the seaworthiness of that object; he warrants its seaworthiness only while it is in navigation. [10]

 The term "in navigation" is not a "talismanic incantation," [11] nor is it to be understood narrowly or literally to apply only when the vessel is actually engaged in plying the sea. It is the standard used to determine the applicability of the Jones Act as well as the warranty of seaworthiness. [12] It requires only that

---

1. 33 U.S.C.A. § 901 et seq.

2. 33 U.S.C.A. § 905.

3. Ibid.

4. The State of Maryland, 4 Cir., 1936, 85 F.2d 944, explains the doctrine in classic terms. It has of course been applied in innumerable cases. See Norris, The Law of Seamen § 609.

5. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Lawlor v. Socony-Vacuum Oil Co., Inc., 2 Cir., 1960, 275 F.2d 599, 84 A.L.R.2d 613; Christiansen v. United States, 1 Cir., 1951, 192 F.2d 199; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

6. The H. A. Scandrett, 2 Cir., 1937, 87 F. 2d 708, 711.

7. The Cyrus, D.C.Pa., 1789, 7 Fed.Cas. p. 755, Case No. 3930.

8. Recognition of this right was first authoritatively stated as the second proposition in The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760. See Gilmore & Black, The Law of Admiralty § 6–38.

9. Roper v. United States, 1961, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1; West v. United States, 1959, 361 U.S. 118, 80 S. Ct. 189, 4 L.Ed.2d 161; Kissinger v. United States, E.D.N.Y., 1959, 176 F. Supp. 828. See also Norris, The Law of Seamen § 664.

10. The imposed warranty of seaworthiness is limited to vessels in navigation not because there are greater hazards associated with work aboard such vessels, but because those who work on vessels not in navigation are not seamen (or doing seamen's work). See Roper v. United States, 1961, 368 U.S. 20, Note 2, 82 S.Ct. 5, 7 L.Ed.2d 1.

11. United States v. Robel, 1967, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508.

12. Roper v. United States, 1961, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1.

the vessel be "engaged as an instrument of commerce and transportation on navigable waters."[13] Therefore a vessel may be in navigation even when it is incapable of moving under its own power,[14] or when it is tied up in a repair yard,[15] or when it is in dry dock,[16] or when a voyage is imminent.[17]

Where a vessel is in navigation, the warranty of seaworthiness extends to all who do traditional seamen's work, even though they may also be subject to the coverage of the Longshoremen's and Harbor Workers' Act.[18] But the longshoremen[19] and ship repairmen[20] to whom the warranty is thus afforded receive the protection of the doctrine only from a vessel in navigation.[21] When a vessel has been clearly withdrawn from commerce the warranty of seaworthiness does not apply even to a person who is aboard ship to work toward its return to commerce.[22]

The extension of the warranty of seaworthiness to anything but a vessel in navigation would distort its purpose and indeed would belie its name: the owner would be warranting the seaworthiness of what is not going to sea. Hence it was held long before *Sieracki*[23] that a shipyard worker assisting in the commissioning of a launched but uncompleted vessel lying in navigable waters is not a seaman within the meaning of the Jones Act and that admiralty jurisdiction does not apply to a claim against the employer for injuries sustained by an employee while working on such a vessel. Frankel v. Bethlehem-Fairfield Shipyard, Inc., 4 Cir., 1942, 132 F.2d 634. Nothing in the jurisprudence since that decision alters its rationale for the court there concluded:

"Accordingly, since a contract for the building of a ship is non-maritime in character, a tort arising out of work on a launched but incompleted vessel also lacks maritime flavor, despite the fact that the vessel is lying in navigable waters. Furthermore, an incompleted vessel has yet to take her place in commerce and navigation; whereas a vessel which has been commissioned and taken into navigation and commerce remains in that status even when coming into a dock and undergoing certain repairs."[24]

Additional cases to the same effect are hard to find, presumably because the rule is so well settled: the building of a ship has never been considered to be a maritime matter, and it has never been con-

13. Norris, The Law of Seamen, § 664, p. 802; Carumbo v. Cape Cod SS Co., 1 Cir., 1941, 123 F.2d 991.

14. See discussion in Lawlor v. Socony-Vacuum Oil Co., 2 Cir., 1960, 275 F.2d 599, 602–603.

15. Lawlor v. Socony-Vacuum Oil Co., 2 Cir., 1960, 275 F.2d 599.

16. Hilton v. Aegean Steamship Co., D.C. Or., 1965, 239 F.Supp. 268.

17. See Bodden v. Coordinated Carribean Transport, Inc., 5 Cir., 1966, 369 F.2d 273.

18. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

19. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

20. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L Ed. 143.

21. Roper v. United States, 1961, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1; West v. United States, 1959, 361 U.S. 118, 80 S. Ct. 189, 4 L.Ed.2d 161.

22. See discussion in Guenard v. United States, E.D.La., 1968, 278 F.Supp. 310.

23. 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

24. While the maritime lien cases are of limited application in such problems, it is at least relevant that contracts pursuant to which a radio company installed ship-to-shore radios and an automatic pilot in vessels that had been otherwise completed have been held not to be maritime and not to create maritime liens because, "Even after the vessel is launched, while she is not yet sufficiently advanced to discharge the functions for which she is designed, the materials, work and labor for her completion are not the subject-matter of admiralty jurisdiction." The Boat La Sambra v. Lewis, 9 Cir., 1963, 321 F.2d 29, 31.

sidered the work of seamen to build their own vessels. Until the vessel entered upon navigation, it was not a proper subject for the warranty of seaworthiness. It doesn't alter matters that the vessel had been documented, for the documentation of a vessel merely establishes its identity for the purposes of the Certificates of Registry Acts [25] and Ship Mortgage Act [26] and does not define the reach of the warranty of seaworthiness.

■ But the claims for negligence are subject to admiralty jurisdiction. The RALPH BOLLINGER was indeed afloat, and it was being commissioned; it was a vessel inchoate, and perhaps by virtue of documentation a vessel in law. The alleged tort aboard her happened in navigable waters; and it has that smack of the salt air necessary to give it the maritime flavor that is requisite for admiralty jurisdiction.

The issues involved in such cases were thoroughly considered in Weinstein v. Eastern Airlines, Inc., 3 Cir., 1962, 316 F.2d 758, 759, in which an action for death resulting from an aircraft crash in navigable waters was held to be an admiralty matter because, "The critical factor in determining whether a tort claim comes within the broad statutory grant of admiralty jurisdiction is the situs of the tort; i. e., the place where it happened. If the tort occurred on navigable waters, the claim is one that lies within the jurisdiction of the courts of admiralty; nothing more is required." 316 F.2d at 761.

Landmen may marvel that an accidental collision between a surfboard and a swimmer is within the admiralty jurisdiction but, "A surfboard * * * potentially can interfere with trade and commerce," and hence "[A]dmiralty should develop the rules of liability relating to a surfboard's operation." [27] Accidents on platforms anchored 65 miles

off the Coast in the Gulf of Mexico are governed by maritime law, for sound reasons of policy.[28] A fortiori, then, these principles should apply to the RALPH BOLLINGER afloat on Bayou Lafourche.

The final word on the subject, if not the most recent, was spoken by the United States Supreme Court in Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, when the Ninth Circuit Court of Appeals asked: "Is there jurisdiction in admiralty because the alleged tort occurred on navigable waters?" In that case the tort was alleged to have occurred on a vessel in the process of construction. The Supreme Court's answer was a categorical, "Yes."

For the reasons assigned there is judgment for the defendant rejecting any claim based on unseaworthiness. Jurisdiction is retained of the other claims asserted.

---

**25.** 46 U.S.C.A. § 11 et seq.

**26.** 46 U.S.C.A. § 911 et seq.

**27.** Davis v. City of Jacksonville Beach, M.D.Fla., 1965, 251 F.Supp. 327, 328, and see the authorities cited therein.

**28.** Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60.