Mrs. Amy **HALL**, Widow of Jose R. Duncan, Individually and as Natural Tutrix of the Minors, Alan Renaldo Duncan and Cindy Winkleth Duncan, Plaintiff-Appellant,

v.

**HVIDE HULL NO.** 3 and Avondale Shipyards, Inc., Defendants-Appellees.

Thanh H. **DANG,** Plaintiff-Appellant,

**Fidelity & Casualty Co.,** Intervenor-Appellant,

v.

**AVONDALE SHIPYARDS, INC.,** et al., Defendants-Appellees.

Joe **ROSETTI,** Plaintiff-Appellant,

v.

**AVONDALE SHIPYARDS, INC.,** Defendant-Appellee.

Nos. 83–3471, 83–3580 and 83–3607.

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1984.

Rehearing and Rehearing En Banc Denied Jan. 29, 1985.

---

Greenberg & Dallam, Nathan Greenberg, Gretna, La., for plaintiff-appellant in No. 83–3471.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Stewart E. Niles, Jr., Charles E. Leche, New Orleans, La., for defendants-appellees in No. 83–3471.

Amato & Creely, Gayle A. Reynolds, Gretna, La., for Dang.

Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, George J. Nalley, Jr., New Orleans, La., for intervenor-appellant.

Adams & Reese, Robert E. Couhig, Jr., William B. Gaudet, New Orleans, La., for Avondale and El Paso.

Paul S. Minor, Biloxi, Miss., Judy M. Guice, Biloxi, Miss., for plaintiff-appellant in No. 83–3607.

Robert P. Hogan, Covington, La., Hailey, McNamara, Hall, Larmann & Papale, Nelson W. Wagar, III, H.D. McNamara, Jr., Metairie, La., for defendant-appellee.

Before RUBIN, REAVLEY, and TATE, Circuit Judges.

TATE, Circuit Judge:

The central issue in these three appeals [1] is whether a hull, floating on navigable waters during shipbuilding construction, is a vessel for purposes of a tort action authorized by section 5(b), 33 U.S.C. § 905(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. (hereinafter, "Longshoremen's Act"). The district court said "no". We reverse, on the basis of our decision in *Lundy v. Litton Systems, Inc.*, 624 F.2d 590 (5th Cir. 1980), *reh. denied*, 629 F.2d 1349, *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). The panel agrees that we are bound by *Lundy* and that, under the law of the circuit, it must be followed in the absence of en banc overruling. However, the panel also notes that an issue

of bancworthy dimension may be presented by the conflict between *Lundy*'s rationale and some expressions in our more recent jurisprudence that an injury to ship construction workers on board a vessel under construction, although on navigable waters, is not a maritime tort, since ship construction is not a maritime business. *See, e.g., Lowe v. Ingalls Shipbuilding, A Division of Litton*, 723 F.2d 1173, 1185, 1187 (5th Cir.1984).[2]

The issues will be discussed as follows: I. The *Lundy* holding and its rationale; II. Federal admiralty jurisdiction of a § 905(b) action for injuries upon a hull that is under construction and floating in navigable waters; and III. Facts and issues peculiar to each of the three appeals.

I. *The Lundy holding and its rationale.*

In each of the present three suits, an employee admittedly within the coverage of the Longshoremen's Act was injured or killed at work on a floating hull from, variously, 70–90% completed. In each suit, the employee or his survivors brought suit against the vessel or its owner to recover damage that allegedly resulted from the defendant's negligence.

The Longshoremen's Act, as amended in 1972, permits a person covered by the Act to recover tort damages for injuries resulting from the negligence of a vessel. 33 U.S.C. § 905(b).[3] All parties concede that

---

**1.** All three of these cases were dismissed by the same district court after a hearing on a motion for summary judgment. All three were then consolidated on appeal.

**2.** Thus, the defendants in two of the three cases, (*see* note 12 *infra;* diversity jurisdiction is present in the third appeal) urge that, even if we find the present floating hulls to be vessels for purposes of § 905(b), federal admiralty jurisdiction, the sole jurisdictional basis relied upon, is absent. If applied as controlling to the present facts, the *Lowe* principle would not only be in conflict with *Lundy* but also, arguably, with the rationale of other decisions of this and another circuit (to be cited in the text *infra*, accompanying notes 8–10).

**3.** Section 905(b) reads in its entirety:

In the event of injury to *a person covered under this chapter* caused by the *negligence* of a *vessel*, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action *against such vessel* as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. *If such person was* employed by the vessel to provide *shipbuilding* or repair *services,* no such action shall be permitted *if* the injury was caused by the negligence of per-

the employees in question were covered by the Act at the time of their injury or death.[4] The defendants dispute, however, that a "vessel"[5] was involved in the respective work accidents.

In *Lundy v. Litton Systems, Inc.*, 624 F.2d 590 (5th Cir.1980), *reh. denied*, 629 F.2d 1349, *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), the plaintiff, Lundy, a person covered by the Longshoremen's Act, fell through an escape hatch while working aboard the USS Hewitt. When the accident occurred, the USS Hewitt was 97% complete, was being prepared for sea trials, and had an assigned crew. Lundy sued his employer, as owner of the ship, for damages resulting from negligent injury under, inter alia, § 905(b). The district court dismissed Lundy's claim, holding that an incomplete ship is not a vessel for purposes of § 905(b). We reversed, holding

> The definitional section of the LHWCA provides that "[t]he term 'vessel' means any vessel upon which or in connection with which a person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment ..." 33 U.S.C.A. § 902(21) (West 1978). Persons entitled to benefits under the LHWCA are "employees." See id § 903(a). "The term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker ...." Id.

§ 902(3). We have previously held that "[s]hipbuilders who do the initial work to construct a vessel for launching are just as engaged in shipbuilding as those who are completing the task after something is finished which can be called a ship." Ingalls Shipbuilding Corp., Division of *Litton Systems, Inc. v. Morgan*, 551 F.2d 61 (5th Cir.1977). Thus, incomplete ships upon which 33 U.S.C. § 902(3) employees are working at a site which [is within] the coverage of the Act, 33 U.S.C. § 903, are vessels within the meaning of 33 U.S.C. § 902(21). The USS Hewitt was thus moored to the statute.

624 F.2d at 592.

In the panel's view, the rationale and holding in *Lundy* represent controlling precedent in this circuit and require reversal of the summary judgments granted in the three appeals before us, insofar as they are based upon the district court's appreciation that the floating hulls in the three present cases could not be vessels because uncompleted. *Lundy*'s characterization of the hull in that case as a vessel for § 905(b) purposes rested directly upon its holding that the incomplete ship afloat was a "vessel" within the statutory meaning of the Longshoremen's Act.

■ The application of *Lundy* to the present facts, thus, cannot be respectably distinguished, as argued, simply because the present floating hulls were only, respectively, 75–90%, 70%, and 80–85% complete, instead of, as in *Lundy*, 97% com-

---

sons engaged in providing shipbuilding or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

(Emphasis added.)

**4.** Coverage applies to "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or a

member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." 33 U.S.C. § 902(3).

**5.** The term "vessel" is defined by the Act as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bareboat charterer, master, officer, or crew member." 33 U.S.C. § 902(21). *See also*, however, 1 U.S.C. § 3 (defining "vessel") and discussion in text *infra* at 746 F.2d 298 *et seq.*

plete. The floating hulls in the present cases, equally to that in *Lundy*, were "capable of being used as a means of transportation on water", 1 U.S.C. § 3, and were thus likewise "vessels" for the purposes of the Longshoremen's Act. *Burks v. American River Transportation Company*, 679 F.2d 69, 75 (5th Cir.1982).

Furthermore, to anticipate II *infra*, in *Lundy* the sole basis of federal jurisdiction asserted for this § 905(b) action was the admiralty jurisdiction [6]. The *Lundy* panel rejected (although without express comment) contentions of the defendant therein, similar to those that are presently advanced, that an action for negligent injury to a shipbuilding employee could not be brought in federal court against the uncompleted vessel within the ambit of § 905(b) because the injury did not arise from a maritime tort.[7] Indeed, the *Lundy* defendant relied in part upon *Hollister v. Luke Construction Company*, 517 F.2d 920 (5th Cir.1975), the same decision relied on heavily by the present defendants, *see* II *infra*. *Lundy* 's application to the present facts, thus, cannot be distinguished on a jurisdictional basis either.

**6.** The court's opinion does not explicitly mention the basis for jurisdiction. However, we have reviewed the briefs filed on appeal in *Lundy*, and they indicate no other basis for jurisdiction.

**7.** In *Lundy*, we thus rejected the following argument made by the vessel owner in its appellate brief at pp. 12–13:
In *Walter v. Marine Office of America*, [537 F.2d 89 (5th Cir.1976) ], this Court said:
"... Traditionally contracts for the construction of a ship are not ordinarily within the Article III maritime and admiralty jurisdiction."
[537 F.2d 94].
In *Hollister v. Luke Construction Co.*, [517 F.2d 920 (5th Cir.1975) ], this Court said:
"... The fact that the barge here was only partially completed at the time of plaintiff's injury is thus dispositive of his claim based on Luke's alleged maritime negligence. *See Garcia v. American Marine Corp., supra,* 432 F.2d [6] at 7 [ (5th Cir.1970) ]; *Alfred v. M/V MARGARET LYKES, supra,* 398 F.2d [684] at 685, [ (5th Cir.1984) ]. The district court correctly granted summary judgment on that claim as well as on the others."
[517 F.2d 921, 922]

*Lundy* 's definition of a floating hull as a vessel for purposes of § 905(b) is consistent with our decision in *Burks v. American River Transportation Company*, 679 F.2d 69 (5th Cir.1982) and with the definition of vessel in Title 1 (General Provisions), Chapter 1 (Rules of Construction), of the United States Code:

The word "vessel" includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.

1 U.S.C. § 3.

In *Burks, supra,* 679 F.2d at 75, we held that this code definition provides the meaning of vessel "as that term is used in the LHWCA [Longshoremen's and Harborworkers' Act]." That a waterborne structure is *"capable* of being used for transportation on water" (emphasis the court's) is, thus, the test. *Id.* In *Burks,* the court further indicated that a harbor worker on a vessel so defined would have a § 905(b) negligence action for injury thereupon, 679 F.2d at 76 [8].

The Second Circuit, by a similar rationale, likewise recognized the principle that, for purposes of the Longshoremen's Act, a

Appellant suggests in his brief that this Court should extend the doctrine of *Smith v. M/S The Captain Fred, supra,* to allow a third-party action to be brought by the appellant against his employer and a co-employee on the theory that the incompleted ship was a vessel under the doctrine of *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). *Smith v. M/S The Captain Fred, supra,* dealt with injuries suffered by a repairman onboard the vessel. In this case [*Lundy* ] there was no completed vessel, and the appellant's injury was not sustained aboard a completed vessel, nor resulted from the negligence of a completed vessel.

**8.** However, the *Burks* claimant had lost his negligence action in the trial court, and did not urge that point on appeal. 679 F.2d at 76.

The court had previously noted that the claimant therein was not a member of the crew (*see* note 10 *infra* ) of the watercraft on which injured and that, by reason of the 1972 amendments, he had no unseaworthiness cause of action. *Id.*

hull is a vessel if, even though not self-powered, it is capable of being towed on the water. In *McCarthy v. The Bark Peking*, 716 F.2d 130, 133–34 (2nd Cir.1983), *cert. denied sub. nom. South Street Seaport Museum v. McCarthy*, — U.S. —, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984), the issue was whether an employee covered by the Longshoremen's Act was injured as the result " 'of the negligence of a *vessel*' within the meaning of § 905(b)", 716 F.2d at 133 (emphasis added), and thus entitled to bring an action against the vessel under § 905(b) for its negligent injury to the plaintiff employee. The ship on which the employee was injured was a floating museum vessel, which, rudderwelded, had not put to sea under its own power for half a century, and which was not susceptible to use as a self-navigating craft (although capable of being towed). The vessel defendants contended that the plaintiff employee could not avail himself of a § 905(b) remedy because this ship allegedly could not be considered a vessel within the meaning of the Longshoremen's Act.

The Second Circuit rejected the defendant's contention. Relying on our decisions in *Burk* and *Lundy*, cited above, the Second Circuit held that the ship in question met the test of being a vessel, since it was *"capable of being used as a means of transportation on water"* within the statutory definition provided by 1 U.S.C. § 3. *Id.*, 716 F.2d at 134.[9] The court, additionally, pointed out uniform jurisprudence by which, under this test, a waterborne structure *capable* of being used for water transportation, even if only while towed, could be considered a vessel. *Id.*, 716 F.2d at 134–35.[10] The court also noted that the 1972 amendments to the Longshoremen's Act had been held "to be broadly inclusive." *Id.*, 716 F.2d at 133.

By this test, all three hulls in the present cases were vessels for purposes of a § 905(b) action. They had been launched and were afloat in navigable waters, although moored to the shore.

By its terms, § 905(b), enacted by the 1972 revision of the Act, recognizes that an Act-covered employee injured while working on an uncompleted vessel is entitled to assert a negligence action against it or its owner. The statutory section also recognizes that a "person employed by the vessel to provide shipbuilding ... services" may bring a negligence action against the vessel (*except* where the injury results from the negligence of persons engaged in providing shipbuilding or repair services. *See* note 2 *supra* (quoting § 905(b) in full)). Prior to the 1972 amendments of the Act, "[a] shipbuilder's worker ... assisting in the building and ultimate commissioning of a launched but uncompleted vessel floating or maneuvering in navigable waters" had been held to be entitled under general maritime negligence principles to sue the vessel or its owner for injuries sustained while on the uncompleted vessel in navigable waters. *Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955, 958–59 (5th Cir.1971).[11] For rea-

---

**9.** Referring to a relevant rule of statutory construction, the Second Circuit stated:

Since Congress, in its use of the term 'vessel' in 902(21) and 905(b), did not provide a definition different from the generally acknowledged one found in section 3, we may presume, as other courts have, that it intended to adopt this commonly-used term. *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947, 952–53 (7th Cir.1979), *aff'd*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). (footnote omitted).

*McCarthy, supra,* 716 F.2d at 134.

**10.** Whether the "vessel" was also "in navigation", so as to present a Jones Act situs (or so as to constitute a waterfront employee "a master or member of a crew of any vessel", 33 U.S.C.

§ 902(3), who would thus be excluded from coverage by the Longshoremen's Act), presents a different issue, one that is not involved in the present actions. *See, e.g., Williams v. Avondale Shipyards, Inc.*, 452 F.2d 955 (5th Cir.1971) (a cutter on the water under final sea trial was not a vessel in navigation for purposes of Jones Act coverage, but nevertheless a maritime tort action might be available to a person injured on it).

**11.** *See,* to similar effect, *Rogers v. M/V Ralph Bollinger*, 279 F.Supp. 92, 93 (E.D.La.1968):

A ship under construction, launched and lying in navigable waters, but not yet completed, is not a vessel in navigation. Hence a shipyard worker injured aboard it is not entitled to a warranty of seaworthiness. But it is

sons to be set forth more fully in part II *infra,* the statutory language of § 905(b) in this regard was intended, in our opinion, to preserve maritime jurisdiction over the shipbuilder's cause of action against a floating vessel under construction that had been previously recognized . by decisions such as *Williams.*

Thus, *Lundy*'s rationale and holding—controlling as to the three cases now before us—is consistent both with principles expressed by relevant jurisprudence of this court and with the statutory intent of § 905(b).

## II. *Federal admiralty jurisdiction of a § 905(b) action for injuries upon a hull under construction, which is floating in navigable waters*

For reasons to be stated more fully, we also find that *Lundy*'s holding is consistent with prior jurisprudential holdings and the Congressional intent, in its implicit finding that there is federal admiralty jurisdiction over § 905(b) actions brought by shipbuilders injured aboard partially constructed vessels floating on navigable waters. We are further of the opinion that the language of § 905(b) was intended to preserve maritime jurisdiction over such claims, which under pre-1972 judicial interpretations were considered to be maritime actions. We are thus unable to accede to the argument of the defendants that, even though their hull might under the statutory intent *of § 905(b)* be considered a "vessel" against which a negligence action is recognized by § 905(b), nevertheless, federal admiralty *jurisdiction* would not extend to a § 905(b) action against such a vessel because a hull under shipbuilding construction bears no significant relationship to traditional maritime activity. We find no such distinction between a § 905(b) cause of action and admiralty jurisdiction to have been

Congressionally intended by the enactment of § 905(b).

However, we recognize that this holding is in conflict with expressions in at least two decisions of this circuit, which (although concerning distinguishable issues) indicated that federal admiralty jurisdiction did not extend to injuries on uncompleted vessels. Relying on these decisions, the defendants in two of the cases before us [12] argue that federal jurisdiction is lacking, on the principle we stated in *Lowe v. Ingalls Shipbuilding, A Division of Litton,* 723 F.2d 1173 (5th Cir.1984), that "an injury to a ship construction worker onboard a ship under construction and lying in navigable waters is not a maritime tort". *Id.* at 1187).

*Lowe* did not cite *Lundy,* but in support of this principle relied upon the holding to this effect in *Hollister v. Luke Construction Co.,* 517 F.2d 920 (5th Cir.1975), which had been cited to the *Lundy* panel but ignored by it as noncontrolling. *See* text at notes 6 and 7 *supra. Hollister* had conceded the principle expressed in *Williams v. Avondale Shipyards, Inc., supra,* 452 F.2d at 959—that an injury on a vessel (broadly defined as in 1 U.S.C. § 3) on navigable waters may give rise to a maritime negligence action—but distinguished it as inapplicable because "a tort arising out of work on a launched but incomplete vessel ... lacks maritime flavor." *Hollister, supra,* 517 F.2d at 921.

Without reference to the construction of the Longshoremen's Act by *Lundy,* the *Lowe* panel construed the Supreme Court's holding in *Executive Jet Aviation Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), reaffirmed in *Foremost Insurance Company v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73

afloat, and accidents happening on it occur on navigable waters. Therefore, the admiralty jurisdiction of this Court extends to tort claims arising from such accidents. Thus, insofar as the shipyard worker in this case is concerned, this Court has jurisdiction in admiralty of his claim that the owner of the

vessel and the owner's officers were negligent....

**12.** *Hall v. Hvide Hull No. 3,* No. 83–3471; *Dang v. Avondale Shipyards,* No. 83–3580. In the third appeal before us, *Rosetti v. Avondale Shipyards, Inc.,* No. 83–3607, there was federal diversity jurisdiction.

L.Ed.2d 300 (1982), as providing that "where [under previous decisional law] the tort was previously maritime only because of situs, the activity being nonmaritime, *Executive Jet* now requires that the tort be considered nonmaritime." *Lowe, supra,* 723 F.2d at 1187. *Lowe* indicated that, therefore, *Executive Jet* had overruled prior decisional law that had recognized as a maritime tort the negligence of an incompleted vessel, if afloat on navigable waters, that injured a construction worker aboard. 723 F.2d at 1185–1187.[13]

The decision in *Lundy,* which the panel finds to be directly applicable to and controlling of the present facts, is essentially inconsistent with the rationale of *Lowe* and *Hollister,* although consistent with our decision in *Burks v. American River Transportation Company* (1982), cited in part I *supra.* En banc resolution of the conflicting rationales may thus be necessary.

We should perhaps note, however, that *Lowe* and *Hollister* arose in a context distinguishable from the present. *Lowe* did not concern a § 905(b) action; rather, it was a declaratory judgment action to determine the indemnity rights of a shipyard employer against an asbestos manufacturer, with regard to the manufacturer's liability to the employer for longshoremen's compensation benefits which the shipyard employer had paid its employees contracting asbestosis during their employment. *See* note 13 *supra.* Similarly, *Hollister* can arguably be distinguished as not pertaining to a § 905(b) action, because there the injured employee himself denied Longshoremen's Act coverage and sought recovery only under the Jones Act and the general maritime law (i.e., not as an employee covered by the Act asserting a maritime negligence claim preserved for him by § 905(b) of the 1972 amendments to the Act).[14]

More importantly, however, the central rationale of *Lowe* is not applicable to the Congressionally contemplated § 905(b) action by a shipbuilder injured on an uncompleted vessel afloat on navigable waters, which was considered at the time of enactment of § 905(b) in 1972 as a maritime action since arising on a navigable situs. *Lowe's* central rationale was that shipbuilding was a non-maritime activity, so

**13.** The actual merit-issue in *Lowe* was whether a shipyard employ*er,* covered by the Longshoremen's Act, had an independent cause of action against an asbestos manufacturer for the excess of compensation benefits (due under the Act to its asbestos-disabled employ*ees* ) paid by the employ*er* over the amounts received by the employees in settlement of their tort claims against the manufacturer. However, without reaching the merits of the claim, *Lowe* held that federal subject matter jurisdiction was not established, after rejecting several other federal-jurisdiction grounds advanced. In substance, *Lowe* stated that federal maritime law, upon which federal jurisdiction might be based, did not govern the right of the shipyard employer to recover against the manufacturer, since any injury caused by the *manufacturer* to the construction employees aboard the floating hulls would not under *Executive Jet* be a maritime tort.

**14.** In fairness, we should note that *Hollister* relied upon two decisions of this circuit in which the panels *did* decide that issue. These decisions held that admiralty jurisdiction was absent for a tort to an employee arising out of work on a launched but incompleted vessel: *Garcia v. American Marine Transportation,* 432 F.2d 6 (5th Cir.1970) and *Alfred v. M/V Marga-*

*ret Lykes,* 398 F.2d 684 (5th Cir.1968). *Garcia* relied solely upon *Alfred,* and *Alfred* relied primarily upon *Frankel · v. Bethlehem-Fairfield Shipyard, Inc.,* 132 F.2d 634 (4th Cir.1942), *cert. denied,* 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702 (1943), overlooking that, despite broad language, the issue actually decided in *Frankel* was whether a construction worker on such an incompleted vessel was a *seaman,* so as to have a Jones Act remedy. So far as we can ascertain, the jurisdictional holdings in *Alfred* and *Garcia* have not been cited or followed by any decision other than *Hollister.*

Indeed, their jurisdictional holdings are contrary to the controlling decisions of the Supreme Court and of this circuit. As *Lowe* itself states with regard to pre-1972 decisional law, although a ship construction worker was held to be engaged in a non-maritime activity, nevertheless, "even if the injured party was not engaged in maritime activity, the tort was maritime if it took effect on navigable waters. *Grant Smith-Porter Ship Co. v. Rohde,* 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922)." *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1186 (5th Cir.1984). *See also Burks v. American River Transportation Company,* 679 F.2d 69, 75–76 (5th Cir.1982); *Rogers v. M/V Bollinger,* 279 F.Supp. 92, 96 (E.D.La.1968) (Rubin, J.).

that therefore an injury sustained in such activity did not meet the test announced in *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), that, even though an injury to an employee occurs over navigable waters, it is "also" necessary "that the wrong bear a significant relationship to traditional maritime activity." *Id.,* 409 U.S. at 268, 93 S.Ct. at 504. *Lowe*'s rationale is of doubtful relevance to the present issues, because of its differences with the present cases in cause of action [15] and in the legal values of federalism there (not here) at issue.[16]

Of more central importance to rejecting the application of the *Lowe* rationale to the federal-jurisdiction issue now before us, however, is that the Supreme Court itself has held that the remedies of employees who are covered by the Longshoremen's Act and who are injured on navigable waters are not affected by *Executive Jet. Director, Office of Workers' Compensation Programs v. Perini North River Associates,* 459 U.S. 297, 320 n. 29, 103 S.Ct. 634, 649 n. 29 (1984). Thus, in effect, if injury to an Act-covered employee was considered to constitute a maritime tort prior to the 1972 amendments, then "the wrong [to him] bear[s] a significant relationship to traditional maritime activity," *Executive Jet, supra,* 409 U.S. at 268, 93 S.Ct. at 504, so as to meet this quoted "nexus" prong of the *Executive Jet* test for maritime-tort federal admiralty jurisdiction. (The present injury having occurred on the navigable waters, the "situs" test of *Executive Jet* is also here satisfied.)

In *Perini, supra,* the Court specifically rejected the contention that *Executive Jet* (characterized as applicable to a " 'wholly fortuitous' " maritime situs) required limitation of a remedy to amphibious workers injured on navigable waters—a remedy that was Congressionally contemplated by the 1972 amendments to the Longshoremen's Act, in view of the absence of shown legislative intent to change prior jurisprudential interpretations so providing. 459 U.S. at 320 n. 29, 103 S.Ct. at 649 n. 29. In holding that the marine construction worker there involved, who was injured on actual navigable waters, was entitled to the

**15.** The actual holding of *Lowe* was only that no maritime tort upon which federal admiralty jurisdiction could be founded was presented by the suit to determine a shipbuilding employer's claim of tortious liability to it of an asbestos manufacturer. Independent of any cause of action conferred by the Longshoremen's Act itself, the employer sought recognition of its right to require indemnification from the asbestos manufacturer for excess compensation payments made by the employer to its employees covered by the Act for asbestos-caused disability. *See* note 13. The concerns as to whether this cause of action represented a maritime tort are quite distinct, in our opinion, from the issue as to whether there is federal jurisdiction to entertain the suit of a shipbuilding worker negligently injured on navigable waters, traditionally viewed as a maritime tort.

**16.** In discussing the jurisdiction issue, the defendants here rely on a number of cases in addition to *Lowe. See Owens-Illinois v. United States District Court,* 698 F.2d 967 (9th Cir. 1983); *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.), *cert. denied,* ─ U.S. ─, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.), *cert. dismissed,* ─ U.S. ─, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). *See also Harville v. Johns-Manville Products Corp.,* 731 F.2d 775 (11th Cir.1984). Each of these cases, however, can be distin-

guished on the same grounds that *Lowe* may be distinguished: none involves either a § 905(b) claim against a vessel or its owner, or a question about the scope of the federal courts' admiralty jurisdiction under the Longshoremen's Act. All are based on the alleged liability of a manufacturer for injuries sustained in connection with the manufacturer's asbestos products. Even more important, perhaps, all involve the delicate question whether the federal interest in an amphibious worker's personal injury claims is sufficiently strong to justify federal courts supplanting state law with the federal common law of admiralty. *See Harville, supra,* 731 F.2d at 786. This question is not relevant to the present facts. *See* text. As the Supreme Court noted in *Scindia Steam & Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 165 n. 13, 101 S.Ct. 1614, 1621 n. 13, 68 L.Ed.2d 1 (1981), "[i]t was anticipated ... that questions arising in § 905(b) cases 'shall be determined as a matter of federal law.' " (quoting S.Rep. No. 92-1125, p. 12 (1972). We know that "[o]ur regard for our federal system requires that we scrupulously confine federal admiralty jurisdiction to the precise limits defined by Congress." *Holland v. Sea-Land Service, Inc.,* 655 F.2d 556, 559 (4th Cir.1981). These sensitive values are not at issue in the present cases.

Congressionally contemplated compensation remedy, the Court noted that he "was by no means 'fortuitously' on the water when he was injured", and also referred to the Act's legislative history and "jurisprudential interpretations over the course of decades" as affording a consideration by which *Executive Jet* did not apply so as to limit the remedy of an employee covered by the Act. *Id.*

Earlier, in describing the effect of the 1972 amendments to the Act, the Supreme Court in 1981 had noted that, while an Act-covered employee's right to recover for the ship's unseaworthiness was thereby abolished, nevertheless the Congressional intent was that "his right to recover from the shipowner for negligence was *preserved* in § 905(b), which provided a statutory negligence action against the ship." *Scindia Steam & Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 165, 101 S.Ct. 1615, 1621, 68 L.Ed.2d 1 (1981) (emphasis added). Prior to the 1972 amendments to the Longshoremen's Act, an employee covered by the Act clearly had a maritime tort remedy against the vessel or its owner, when negligently injured by a vessel (broadly defined) that was afloat on navigable waters. *Lowe v. Ingalls Shipbuilding, supra,* 723 F.2d at 1185–86; *Burks v. American River Transportation Company,* 679 F.2d 69, 75–76 (5th Cir.1982); *Rogers v. M/V Gollinger,* 279 F.Supp. 92, 96 (E.D.La.1968) (Rubin, J.). *See also Grant Smith-Porter Ship Co. v. Rohde,* 257 U.S. 469, 477–78, 42 S.Ct. 157, 159, 66 L.Ed.2d 321 (1922).

▮▮▮ Under the Supreme Court's decisions in *Perini* and *Scindia, supra,* therefore, the Congressional intent of the 1972 amendments to the Longshoremen's Act, including that provided by § 905(b), was to preserve within the federal admiralty juris-

diction the traditional maritime tort remedy of an Act-covered employee for injuries caused by the negligence of a vessel, broadly defined, while on the navigable waters.[17] For purposes of federal admiralty jurisdiction, maritime connexity (*Executive Jet*'s requirement that the injury be in a "traditional maritime activity") was, in effect, Congressionally so determined through Congressional acceptance, in the 1972 revision of the Longshoremen's Act, of pre-1972 traditional judicial determinations of the maritime character of the activity involved in injuries to these amphibious workers. Thus, shipbuilding employees injured in constructing a vessel on navigable waters are regarded by § 905(b) as no less injured in a maritime employment than they were, before the enactment of § 905(b) in 1972, by the pre-1972 jurisprudence.

We therefore reject the defendants' contention that the present claims were not within the federal admiralty jurisdiction and should, therefore, be dismissed. Consequently, the showing made in each of the cases does not permit summary judgment excluding maritime tort recovery and federal admiralty jurisdiction as to their claims of negligent injury by a vessel under construction and upon the navigable waters.

### III. *Facts and issues peculiar to each of the three appeals.*

We now set forth briefly the facts of each of the three appeals, construed as required most favorably to the opponents of the summary judgments granted, and dispose of any issues peculiar to that appeal.

### A.

*Hall v. HVIDE HULL NO. 3—No. 83–3471*

Jose R. Duncan died from exposure to argon gas on April 29, 1981. At that time,

---

**17.** Indeed, we ourselves reached this general conclusion in *Parker v. Southern Louisiana Contractors, Inc.,* 537 F.2d 113 (5th Cir.1976). Although we rejected the contention that § 905(b) created a new and independent federal tort remedy for an Act-covered employee who was injured on land, we there concluded, as to the Congressional intent of § 905(b), that "[w]ith respect to third party actions for negligence, the reasonable inference [to be drawn from the legislative history] is that *the boundaries of maritime jurisdiction as defined under prior law . . . were neither expanded nor constricted by passage of the 1972 Amendments, but simply retained." Id.,* 537 F.2d at 117 (emphasis added.).

Duncan was employed by Avondale Shipyards, Inc. ("Avondale") and was working aboard the Hvide Hull No. 3, an Avondale hull floating in a wet-dock at the Avondale Shipyards on the Mississippi. Duncan's widow and two minor children sue both the Hvide Hull No. 3 and Avondale in its capacity as owner of the hull.

In deciding the defendant's motion for summary judgment, the district court found that, at the time of Duncan's death, the Hvide Hull No. 3 was only 75–90% complete, had no assigned crew, and had never undergone sea trials. With these findings in mind, the district court ruled that, when Duncan died, the Hvide Hull No. 3 was not a vessel within the terms of section 905(b) of the Longshoremen's Act and that no basis for jurisdiction existed under the general maritime law.

■ As previously noted, *Lundy* requires reversal.[18]

B.

*Dang v. Avondale Shipyards, Inc.—83–3580*

On or about July 12, 1978, Thanh H. Dang sustained injuries while working aboard the M/V El Paso Columbia, a tanker being constructed by Avondale pursuant to a contract with El Paso Columbia Tanker Company ("El Paso"). At the time of Dang's accident, the M/V El Paso Columbia was floating in the Mississippi River and was held in place by a number of mooring lines. Following the accident, Dang filed two timely negligence actions against Avondale and El Paso.

■ An issue as to whether Avondale was an owner of the vessel stems from a provision in the defendant's construction contract:

Title to the Vessel [The M/V EL PASO COLUMBIA], *to the extent completed,* and title to all work and material performed upon or installed in the Vessel shall vest in the Purchaser [El Paso]. . . . The Contractor [Avondale] shall have an equity in such material and completed contract work in the Contractor's Shipyard and elsewhere to the extent that it has not been paid for by the Purchaser and to the extent that it is not incorporated in or installed on a *delivered* Vessel. (emphasis added).

The district court dismissed the two defendants for different reasons. It dismissed Avondale on the grounds that, according to the construction contract, Avondale was not a vessel owner and so could not be held liable for vessel-owner negligence in a tort action authorized by section 905(b). It dismissed El Paso on the grounds that, at the time of Dang's accident, the M/V El Paso Columbia was not a vessel within the terms of section 905(b), since at that time the tanker was only 70% complete, had no assigned crew, and had never had any sea trials.

Reversal of El Paso's dismissal is required by *Lundy, see* I above. Turning then to the dismissal of Avondale, we find that the district court erred·in concluding that no material facts are in dispute regarding Avondale's alleged ownership interest in the M/V El Paso Columbia. In our view, the relevant provision in the con-

---

**18.** The district court also found that Duncan's death, if it resulted from negligence at all, resulted from Avondale's negligence as shipbuilder, not as shipowner. The applicable language in section 905(b) provides that an action for "negligence of a vessel" cannot be brought "if the injury was caused by the negligence of persons engaged in providing shipbuilding or ship services to the vessel." 33 U.S.C. § 905(b). According to the district court, this language provides an additional basis for dismissing the plaintiffs' suit. Dismissal on this ground upon the factual showings made at summary judgment stage was not warranted. Under § 905(b) a vessel owner also furnishing services to its vessel through Longshoremen's-Act-covered employees "is liable only for negligence in its 'owner' capacity, not for negligence in its 'stevedore' capacity." *Jones & Laughlin Steel Corporation v. Pfeiffer,* 462 U.S. 523, —— n. 6, 103 S.Ct. 2541, 2547 n. 6 (1983). The facts in the case now before us were not sufficiently developed below for the district court to conclude by summary judgment that Avondale's negligence resulted from its activities as shipbuilder instead of as vessel owner. In short, the district court's conclusion regarding this issue was premature.

tract is ambiguous and is subject to factual parol evidence as to its intended meaning with regard to ownership of the vessel. A potential meaning susceptive of parol explanation is that, in fact, El Paso had only a security interest in the vessel and that its paper evidence to title was merely a disguised security interest to be held until the "completed contract work" was "delivered", not until such time would title be vested in El Paso. Another potential meaning of the contract is that the two parties were co-owners.

Therefore, on the face of the summary judgment showing, we are unable to conclude on the naked basis of the contract provision that no material issue of fact as to ownership is disputed, so as to permit summary judgment.

For purposes of this appeal, then, under the showing made in support of the motion for summary judgment, both Avondale and El Paso may be either an owner or a co-owner of the M/V El Paso Columbia, a vessel on navigable waters within the meaning of *Lundy*, and thus subject to 905(b) liability. *See* I. *supra*. We reverse the summary judgments in favor of these two defendants.[19] This does not preclude a contrary finding on the merits, or on later motion for summary judgment if the facts we have assumed are shown to be incorrect.

## C.

*Rosetti v. Avondale Shipyards, Inc.—83–3607*

On or about March 2, 1981, Joe Rosetti, an employee of Universal Systems, Inc., sustained injuries while working aboard the Ogden 1, a hull floating in the Mississippi River and owned by Avondale. Following his accident, Rosetti filed this suit against Avondale as owner of the hull. Shortly thereafter, the defendant filed a motion for summary judgment.

In deciding the defendant's motion, the district court found that, at the time of Rosetti's accident, the Ogden 1 was still under construction: it was only 80–85% complete, was lacking most of its navigational equipment, had no operations crew, and had never undergone dock or sea trials. In light of these findings, the district court ruled that, at the relevant time, the Ogden 1 was not a vessel within the terms of section 905(b) of the Longshoremen's Act. Under *Lundy*, the district court erred.

Since the parties are diverse, federal jurisdiction has never been disputed. We therefore reverse.

## IV.

In light of the foregoing, we VACATE the district court's dismissals by summary judgment in all three of these consolidated cases, and we REMAND for further proceedings consistent with the views expressed herein.

**VACATED AND REMANDED.**

---

**19.** The district court also found that, if Dang was injured by Avondale's negligence, he was injured by Avondale's negligence as shipbuilder, not as shipowner. On the basis of the facts herein thus far shown, summary judgment on this ground was not warranted. *See* note 18 *supra*.