Mrs. Amy HALL, Widow of Jose R. Duncan, Individually and as Natural Tutrix of the Minors, Alan Renaldo Duncan and Cindy Winkleth Duncan, Plaintiff-Appellant,

v.

HVIDE HULL NO. 3, et al., Defendants-Appellees.

No. 86–3054.

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1986.

Greenberg & Dallam, Nathan Greenberg and David Greenberg, Gretna, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Edward J. Koehl and Thurl Stalnaker, Jr., New Orleans, La., for defendants-appellees.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

The plaintiffs are the widow and children of Jose R. Duncan, who was killed while working for Avondale Shipyards as a welder on the vessel Hvide Hull No. 3. After the district court granted the defendant's motion for summary judgment, this court vacated and remanded. *Hall v. Hvide Hull No. 3*, 746 F.2d 294 (5th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985). Upon remand, the district court again granted summary judgment to the defendant on different grounds. We now affirm.

I.

At the time of his death, Jose Duncan worked for Avondale as a welder and tank tester. While working aboard the Hvide Hull No. 3 in 1981, Duncan was overcome by argon gas and died. At the time of his death, Duncan was helping prepare the No. 2 port wing aft tank for eventual hydrotest inspection. It was not conclusively established how or why the argon gas feeder line, from which the poison gas leaked, was in the No. 2 port wing tank.

Avondale has paid worker's compensation benefits to Duncan's family in accord-

ance with the provisions of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. Avondale has paid compensation benefits exceeding $81,000, and continues to pay benefits of approximately $375 per week. In addition, Avondale paid funeral expenses for Duncan in excess of $3,800.

Duncan's widow and children (hereinafter referred to as appellant) filed suit against Avondale in its capacity as owner of the vessel. The district court granted Avondale's motion for summary judgment, ruling that the Hvide Hull No. 3, which was not completed at the time of the accident, was not a vessel within the meaning of § 905 of the LHWCA. This court vacated that decision and remanded the case for a further development of the factual record. *Hall*, 746 F.2d at 303–04 & n. 18. Avondale filed another motion for summary judgment arguing that Avondale was engaged in shipbuilding at the time of Duncan's death, meaning that the appellant's exclusive remedy would be the compensation it was receiving under the LHWCA. The district court granted this motion.

## II.

In *Hall*, we made clear that at the time the district court granted Avondale's first motion for summary judgment, "[t]he facts in the case ... were not sufficiently developed ... for the district court to conclude by summary judgment that Avondale's negligence resulted from its activities as shipbuilder instead of as vessel owner." 746 F.2d at 304 n. 18. The factual record has now been developed, and it is clear that Avondale's negligence which was responsible for Duncan's death was negligence as shipbuilder.

The version of the LHWCA that controls this case provides, in relevant part, as follows:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel.... If such person was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by negligence of persons engaged in providing shipbuilding or repair services to the vessel.

33 U.S.C. § 905(b) (1980).[1] The district court concluded that Duncan was employed by Avondale to aid in ship construction, and that Avondale (and Duncan) were indeed engaged in ship construction at the time of Duncan's death.

The uncontroverted summary judgment evidence establishes that Avondale was engaged in shipbuilding at the time of Duncan's death. Duncan entered the tank where he later died for the purpose of preparing the tank for its hydrotest inspection. The inspection was called for by the construction contract under which Avondale was building the ship, and its purpose was to determine the integrity of the welds in the tank as well as the tank's water-tight integrity. Furthermore, the argon gas which caused Duncan's death was used specifically for welding purposes. It is clear that at the time of Duncan's death, both Duncan himself and Avondale were performing shipbuilding activities. *See Reynolds v. Ingalls Shipbuilding Division*, 788 F.2d 264, 272–73 (5th Cir.1986). The appellant's argument that Avondale's negligence as shipbuilder should be imput-

---

**1.** The final sentence of the statute quoted in the text was changed somewhat by the 1984 amendments to the LHWCA. Section 905(b) now provides as follows:

> If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted,

in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. 33 U.S.C. § 905(b). The amended provision applies only to injuries sustained after September 28, 1984. It is therefore not applicable to this case.

able to Avondale as shipowner is unsupported by the facts of this case.[2]

Accordingly, the judgment of the district court is AFFIRMED.

---

**2.** As the district court pointed out in its oral disposition of Avondale's motion, there are circumstances where the same corporate entity can wear two hats, one as shipbuilder and one as shipowner. The summary judgment evidence in this case, however, makes it clear that Avondale was acting entirely as shipbuilder.