Curtis Michael **RICHENDOLLAR,**
**Plaintiff-Appellee,**
**Cross-Appellant**

v.

**DIAMOND M DRILLING COMPANY, INC., Defendant-Appellant, Cross-Appellee**

**and**

**Baker Shipyards, Inc., Defendant-Appellee.**

No. 84–2492.

United States Court of Appeals, Fifth Circuit.

June 16, 1987.

Joseph J. Weigand, Jr., Weigand, Wiegand & Meyer, Houma, La., Bradford M. Condit, White, Huseman, Pletcher & Powers, Corpus Christi, Tex., for Diamond M Drilling Co., Inc.

Michael J. Samanie, Houma, La., for Richendollar.

Richard A. Schwartz, Thelem, Marrin, Johnson & Bridges, Houston, Tex., for Baker Shipyards, Inc. and Baker Marine.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, HILL and JONES, Circuit Judges.

POLITZ, Circuit Judge:

This case occasions our reconsideration en banc of certain of our precedents involving the determination of maritime jurisdiction, and the requisites for a maritime tort action under 33 U.S.C. § 905(b). We reiterate today that when it enacted § 905(b), Congress did not create a new or broader cause of action in admiralty than that which previously existed, but rather, it curtailed available third party tort actions, and in doing so it neither expanded nor constricted maritime jurisdiction.[1] We hold that in order for a waterborne structure to qualify as a "vessel" under § 905(b), it must be a vessel for purposes of maritime jurisdiction. Such a vessel must be capable of navigation or its special purpose use on or in water.[2] We further hold that to be cognizable under § 905(b), a tort must occur on or in navigable waters subject, of course, to the special provisions of the Admiralty Extension Act,[3] and there must be the traditional admiralty nexus.[4] As a consequence, we now reject the suggestion made in *Hall v. Hvide Hull No. 3*, 746 F.2d 294, 302–03 (5th Cir.1984), that the pre-*Executive Jet/Foremost Insurance* test for a maritime tort was codified in § 905(b)

1. *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113 (5th Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977); *Christoff v. Bergeron Industries, Inc.*, 748 F.2d 297 (5th Cir.1984); *May v. Transworld Drilling Co.*, 786 F.2d 1261 (5th Cir.1986).

2. 1 U.S.C. § 3; *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959); *Burks v. American River Transp. Co.*, 679 F.2d 69 (5th Cir.1982).

3. Involving torts consummated on land but caused by vessels on navigable waters. 46 U.S.C. § 740; *Margin v. Sea-Land Services, Inc.*, 812 F.2d 973 (5th Cir.1987).

4. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).

by the 1972 amendments to the Longshore and Harbor Workers' Act. Further, we reject use of the statutory definition of vessel in the LHWCA as the basis for the definition of vessel under § 905(b), as was done in *Lundy v. Litton Systems, Inc.*, 624 F.2d 590 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), and overrule the holding in *Trussell v. Litton Systems, Inc.*, 753 F.2d 366, 367 (5th Cir.1985), that a hull under construction, located "on a building platform in a building-way within the shipyard," and not on navigable waters, was a vessel for § 905(b) purposes.

## Background

Invoking admiralty and diversity jurisdiction, Michael Richendollar sued his employer, Diamond M Drilling Company, for vessel negligence under § 905(b),[5] and Baker Marine Corporation, under Texas tort law, for injuries sustained in a fall. Baker operated a shipyard near Aransas Pass at Ingleside, Texas, and was building a jackup drilling rig for Diamond M. The rig, the DON E. McMAHON, was positioned on blocks, on land, and was approximately 85% complete on October 17, 1980, the date of Richendollar's accident. At that time, the rig had holes in its hull and was not capable of navigation.

By arrangement with Baker, Diamond M put a special crew aboard the DON E. McMAHON to prepare it for drilling operations. Richendollar, a welder on that crew, was injured when a wire screen basket he was using for a workbasket broke, causing him to fall from the rig. The basket was poorly designed and constructed. A fuller recitation of the relevant facts may be found in the panel opinion, *Richendollar v. Diamond M Drilling Co., Inc.*, 784 F.2d 580 (5th Cir.1986).

Trial was had to a jury which found that the jackup drilling rig was a vessel under § 905(b), and that Richendollar was injured as a consequence of vessel negligence. The jury exonerated Baker. A divided panel of this court affirmed as to the liability of Baker and Diamond M and remanded to the district court for assessment of prejudgment interest. The case was voted en banc, thus vacating the panel opinion. *See* Internal Operating Procedures following Local Rule 35. We now reinstate the panel opinion to the extent it affirmed the dismissal of the claims against Baker, 784 F.2d at 584–86. However, we reverse the judgment against Diamond M, concluding that the DON E. McMAHON was neither a vessel for purposes of admiralty jurisdiction nor for a § 905(b) vessel negligence claim.

## Discussion

In *Parker v. South Louisiana Contractors*, we first addressed the import of the 1972 amendments to the LHWCA, particularly § 905(b). We were the first federal appellate court to do so. Parsing the language of the statute, which provided for suits against a vessel as a third party, for injuries caused by vessel negligence, and searching the legislative history and jurisprudential developments leading to the legislation, we concluded that in enacting § 905(b), Congress did not "create a new or broader cause of action in admiralty," and that "[t]aken as a whole, the manifest purpose of section 905(b) is to curtail rather than expand the availability of third party actions in admiralty." 537 F.2d at 117. We further concluded that "[w]ith respect to third-party actions for negligence, ... the boundaries of maritime jurisdiction as defined under prior law were neither ex-

---

**5.** The 1984 Amendments to § 905(b), applicable to injuries occurring after September 28, 1984, would bar this claim by Richendollar and all similar claims. LHWCA Amendments of 1984, Pub.L. No. 98–426, § 5(b), 98 Stat. 1639, 1641. That section provides:

> If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner

pro hac vice, agent, operator or charterer of the vessel, no such [vessel negligence] claim shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.

panded nor constricted by ... the 1972 Amendments." *Id.* (citation omitted).[6]

The genesis of the claim permitted by § 905(b) is *The OSCEOLA,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903), which recognized the warranty of seaworthiness to the crew of a vessel. This warranty was extended to longshoremen by *Seas Shipping v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and *Reed v. The YAKA,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). The ensuing *Sieracki* seaman litigation which, by virtue of the decision in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), permitted an injured employee to recover compensation benefits and then indirectly impose on his employer responsibility for tort damages, led to the 1972 amendments. The pre-1972 claims were entirely maritime in origin. The post-1972 claims are likewise so cast.

### *Jurisdiction*

■ Admiralty jurisdiction of a tort claim depends on whether the plaintiff can establish a maritime tort. That inquiry is essentially fact-bound, turning on a determination of the location of the tort, the situs factor, and the pertinent activity, the nexus factor. Prior to 1972 the question was purely geographic: did the tort occur on navigable waters. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), added the requirement "that the wrong bear a significant relationship to traditional maritime activity," *id.* at 268, 93 S.Ct. at 504.

For purposes of jurisdiction, the configuration of the watercraft is of secondary importance, for, as the Supreme Court held at the turn of this century:

Neither size, form, equipment, nor means of propulsion are determinative factors upon the question of jurisdiction, which regards only the purpose for which the craft was constructed, and the business in which it is engaged.

*The ROBERT W. PARSONS,* 191 U.S. 17 (1903). This functional analysis is reflected in our lodestar definition of a vessel in *Offshore Co. v. Robison,* 266 F.2d 769, 779 (5th Cir.1959), which includes not only conventional watercraft, but also "special purpose structures not usually employed as a means of transport by water but designed to float on water."[7] We reiterated that definition in *Cook v. Belden Concrete Products, Inc.,* 472 F.2d 999 (5th Cir.1973):

Conventional ships and barges as well as such unconventional craft as submersible drilling barges and floating dredges which are designed for navigation and commerce are vessels within general maritime and Jones Act jurisdiction ...

Whatever the configuration of the waterborne structure might be, for maritime tort jurisdiction it must be in or on navigable waters. In *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971) (*citing Thomas v. Lane,* 23 F.Cas. 957 (C.C.Me.1813) (Story, J.)), the Supreme Court restated the traditional rule:

The historic view of this Court has been that the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and that maritime law governs only those torts occurring on the navigable waters of the United States.

The DON E. McMAHON was under construction on land at the time of Richendollar's accident. It was not in or on navigable waters. It was not a vessel within the admiralty jurisdiction of the federal courts

---

6. This decision has met with the uniform approval of our circuit colleagues. *See, e.g., Holland v. Sea-Land Service,* 655 F.2d 556 (4th Cir.1981); *Harville v. Johns-Manville Products Corp.,* 731 F.2d 775 (11th Cir.1984); *Drake v. Raymark Industries, Inc.,* 772 F.2d 1007 (1st Cir.1985).

7. *Robison* primarily addressed the definition of vessel under the Jones Act, but we also affirmed therein an unseaworthiness claim. In *Bernard v. Binnings Const. Co., Inc.,* 741 F.2d 824 (5th Cir.1984), we held that the test for a vessel was the same under the Jones Act and the unseaworthiness doctrine.

under the long-standing jurisdictional rubric, and § 905(b) did not extend that jurisdiction. Accordingly, there is no admiralty jurisdiction.

### Section 905(b) Vessel Negligence Claim

■ Richendollar also invoked diversity jurisdiction for his § 905(b) vessel negligence claim and his Texas state law claim. The successful invocation of 28 U.S.C. § 1332 jurisdiction suffices for the latter, but it does not carry the day for the former. As noted by Chief Judge Clark in the panel dissent, 784 F.2d at 589, "[t]he sine qua non of § 905(b) statutory liability for vessel negligence is the presence of a vessel which admiralty regards as a separate entity distinct from its owner."

We have concluded that the DON E. McMAHON was not a vessel for purposes of admiralty jurisdiction. That conclusion forecloses Richendollar's maritime tort claim, for if the DON E. McMAHON is not a vessel for purposes of admiralty jurisdiction, it is not a vessel for purposes of the § 905(b) vessel negligence claim. Richendollar's claim in this case for injury on land is not cognizable under § 905(b).

### Conclusion

We conclude that the DON E. McMAHON was not a vessel for either admiralty jurisdiction or § 905(b) vessel negligence purposes at the time of Richendollar's accident, for it was then under construction, on land, and incapable of flotation and not on or in navigable waters, and capable of navigation or flotation for a special commercial purpose.

The judgment of the district court rejecting the demands against Baker Marine Corporation is AFFIRMED. The judgment against Diamond M Drilling Company is REVERSED.