Joe ROSETTI, Plaintiff-Appellant,

v.

AVONDALE SHIPYARDS, INC.,
Defendant-Appellee.

No. 85–3711.

United States Court of Appeals,
Fifth Circuit.

July 16, 1987.

Minor & Benton, New Orleans, La., Judy M. Guice, Paul S. Minor, Minor & Benton, Biloxi, Miss., for plaintiff-appellant.

Nelson W. Wagar, III, Metairie, La., Edward J. Koehl, Jr., New Orleans, La., for defendant-appellee.

Before BROWN, REAVLEY, and JONES, Circuit Judges.

PER CURIAM:

This case is controlled by—and its decision has been deferred pending—our very recent en banc decision in *Richendollar v. Diamond M Drilling Co.*, 819 F.2d 124 (en banc) [1987]. In *Richendollar*, this circuit expressly rejected the suggestion made in a previous disposition of this case, consolidated in *Hall v. Hvide Hull No. 3*, 746 F.2d 294 (5th Cir.1984), that "the pre-*Exec-*

*utive Jet/Foremost Insurance* test for a maritime tort was codified in § 905(b) by the 1972 amendments to the Longshore and Harbor Workers' Act." *Richendollar,* at 125. Because Rosetti was injured on an unfinished vessel at a shipyard, we hold, under *Richendollar,* that there was no "vessel" and thus no admiralty jurisdiction. We conclude that Rosetti cannot maintain his § 905(b) vessel negligence claim. Because of his status as a borrowed servant, he also is prohibited from maintaining any state law tort claim. We therefore affirm the decision of the District Court granting summary judgment for Avondale.

### In the Beginning

This case has led a long and exceedingly unhealthy life. On March 2, 1981, plaintiff-appellant Rosetti was injured at defendant-appellee Avondale Shipyards' place of business. Rosetti's nominal employer was Universal Systems, Inc., a company engaged in supplying laborers. In day to day operations, however, Avondale exercised near total control over him in his job as a pipefitter. Since his injury, Rosetti has been paid his compensation benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA) by Universal Systems.

On March 1, 1982, Rosetti filed a suit against Avondale alleging maritime negligence under § 905(b) of the LHWCA, and simple tort negligence under state law. On August 19, 1983, the District Court granted Avondale's motion for summary judgment. The District Court held that the ship Rosetti was working on, the OGDEN I, was under construction at the time of his injury, and accordingly, was not a "vessel" for purposes of admiralty jurisdiction. The District Court also held that Rosetti was Avondale's borrowed servant, and therefore, was precluded from maintaining a state law tort claim against Avondale under *Gaudet v. Exxon Corp.,* 562 F.2d 351 (5th Cir.1977).

On appeal, this case was consolidated with *Hall v. Hvide Hull No. 3,* and *Dang v. Avondale Shipyards, Inc.,* 746 F.2d 294 (5th Cir.1984), *cert. denied,* — U.S. —,

106 S.Ct. 69, 88 L.Ed.2d 56 (1986). All three cases were decided on summary judgment by District Judge Duplantier, who determined that the so-called vessels were "incomplete" for purposes of finding admiralty jurisdiction. On appeal, a panel of this court vacated and remanded all three cases,[1] relying primarily on *Lundy v. Litton Systems, Inc.,* 624 F.2d 590 (5th Cir. 1980); *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). *Lundy* had used the statutory definition of "vessel" in the LHWCA as the basis for the definition of "vessel" under § 905(b), to find that a floating hull was "capable of being used as a means of transportation on water," 1 U.S.C. § 3, and thus was a "vessel" under the LHWCA. *See Burks v. American River Transp. Co.,* 679 F.2d 69 (5th Cir.1982). The court in *Hall* found this definition dispositive in deciding the jurisdiction question.

On remand, Avondale filed another motion for summary judgment. The second motion was granted on October 30, 1985. This time, the District Court held that Rosetti had failed to demonstrate a genuine controversy on the issue of vessel-owner negligence. Rosetti has appealed.

### Is It a Ship Yet?

■ When Rosetti was injured, the OGDEN I was still under construction, being approximately 80% to 85% complete. Although the hull was afloat on navigable waters, the vessel itself was not navigable: the majority of the navigation equipment was not installed, dock trials and sea trials had not taken place, and no crew had been assigned to the vessel. Although the parties dispute to some degree just how complete the vessel was, Rosetti does concede that the OGDEN I was incomplete at the time of his injury.

Accordingly, we are bound by this court's en banc pronouncement that "to be cognizable under § 905(b), a tort must occur on or in navigable waters ... and there must be the traditional admiralty nexus. [I]n order for a waterborne structure to

---

**1.** *Hall v. Hvide Hull No. 3,* 746 F.2d 294 (5th    Cir.1984).

qualify as a 'vessel' under § 905(b), it must be a vessel for purposes of maritime jurisdiction. Such a vessel must be capable of navigation or its special purpose use on or in water." *Richendollar*, at 125.

Because we conclude that the unfinished OGDEN I was not a vessel for purposes of admiralty jurisdiction, it similarly cannot be a vessel for purposes of the § 905(b) vessel negligence claim. The en banc court put its imprimatur on Chief Judge Clark's dissent in the original panel opinion, *Richendollar v. Diamond M Drilling Co., Inc.*, 784 F.2d 580 (5th Cir.1986), in which he reasoned, "[t]he sine qua non of § 905(b) statutory liability for vessel negligence is the presence of a vessel which admiralty regards as a separate entity distinct from its owner." *Id.* at 589. There simply was no such "separate entity" yet. The OGDEN I had not reached such status, in the eyes of admiralty, at the time of Rosetti's injury.[2]

As to Rosetti's state law tort claim, we agree that he is foreclosed from maintaining that action because of his status as a borrowed employee of Avondale's. By Rosetti's own admission, Avondale not only controlled, but had the right to control, virtually every aspect of his employment, including all work, health, and safety rules, from checking in on an Avondale time clock, to being subject to termination by Avondale for any reason. Accordingly, Rosetti's status as a borrowed servant employed by Avondale operates under the LHWCA as a bar to Rosetti's state law negligence claim. Under the LHWCA, workers compensation is the exclusive remedy for an injured employee against his employer. *See* 33 U.S.C. §§ 904(a), 905(a) and 933(i); *Gaudet v. Exxon Corp.*, 562 F.2d 351 (5th Cir.1977); *see also Hebron v. Union Oil Co.*, 634 F.2d 245 (5th Cir.1981). *Hebron* sets out the test for determining "borrowed servant" status as "the central question [is] whether someone has the power to control and direct another person in the performance of his work." *Id.* at 247.

Since the record is substantially undisputed that Avondale exerted practical, near complete control over Rosetti, the District Court was entitled to grant summary judgment on the state based claim.

The voyage leading to the final conclusion in this case has been long and circuitous. Nevertheless, we feel confident that, this court en banc having spoken so forcefully and emphatically, we can without hesitation uphold the District Court's grant of summary judgment for Avondale.

AFFIRMED.

---

**2.** As we have emphasized often, § 905(b) has no effect on the reach of admiralty jurisdiction. It neither expands nor limits its availability. *See*

*Parker v. South Louisiana Contractors, Inc.,* 537 F.2d 113 (5th Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).