**Ellis J. DUCREPONT,**
**Plaintiff–Appellant,**

v.

**BATON ROUGE MARINE ENTERPRISES, INC., Et Al., Defendants–Appellees.**

No. 87–3632.

United States Court of Appeals,
Fifth Circuit.

July 18, 1989.
Rehearing and Rehearing En Banc
Denied Sept. 5, 1989.

Terrence J. Lestelle, Donald G. Kelly, New Orleans, La., for plaintiff-appellant.

Elton E. Duncan, III, Lawrence E. Abbott, New Orleans, La., for Baton Rouge Marine & Employers Ins.

Frederick T. Haas, III, Robert E. Durgin, New Orleans, La., for Commercial Union Ins.

Before GEE, SMITH, and DUHE, Circuit Judges.

GEE, Circuit Judge:

Plaintiff filed suit against his employer, Baton Rouge Marine Enterprises, Inc. (Marine), and its insurers, seeking recovery under the Jones Act and general maritime law or, alternatively, under Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b). The defendant moved for summary judgment on the ground that the barge was not a vessel under either the Jones Act or § 905(b) and that the plaintiff was, therefore, limited to compensation recovery under the general provisions of the LHWCA. The district court, 666 F.Supp. 882, concluded that as a matter of law the structure upon which the plaintiff was injured was not a vessel under the Jones Act or general maritime law. The district court therefore dismissed the plaintiff's Jones Act/general maritime law claims. The district court also concluded, however, that summary judgment as to the structure's status as a vessel under § 905(b) was inappropriate. Consequently, the district court permitted the § 905(b) claim to proceed.

Following a bench trial, the district court granted the defendant's Rule 41(b) motion to dismiss the plaintiff's § 905(b) claim. The court assumed without deciding that the structure on which the plaintiff was injured was a vessel under § 905(b), but held that the 1984 amendments to the LHWCA barred the plaintiff's negligence claim against his employer. We disagree with the district court's assumption that the structure upon which the plaintiff was injured was a vessel under § 905(b). The

district court therefore correctly dismissed the plaintiff's § 905(b) claim, although for the wrong reason. Consequently, we affirm the judgment of the district court.

## I. *Facts*

The defendant was in the business of cleaning, repairing and fleeting barges for a variety of companies. The plaintiff, an employee of the defendant, was allegedly injured when he slipped and fell while leaving his employment aboard a barge owned by the defendant. This barge, originally designed as a cargo barge, was used as a stationary work platform from which the defendant conducted its repairing and cleaning operations. The barge housed two boilers used to clean neighboring barges, had no means of self-propulsion, and was usually moored to the shore by wires. On occasion the barge was tugged a short distance from shore due to the level of the water.

The plaintiff was vice-president of supervision. His duties included overseeing the cleaning and repair activities conducted by the defendant, performing office work and maintaining one of the barge's boilers. The plaintiff spent approximately seventy percent of his working time aboard the barge engaged in one of these activities. In addition, he spent somewhere between ten and fifteen percent of his total employment running a tug for the defendant in furtherance of the cleaning and repair acitivities. The tug was used to move barges which the defendant was servicing to the work platform for cleaning and repair. It was also used to move the work platform in-river when necessary. The barge was not used during the last month of the plaintiff's employment. In its place the plaintiff used one of several small boats.

The plaintiff contends that the barge had a regular crew of which he was a member. Lunches were prepared and served on board. All those performing work on the barge, however, commuted to work. The barge was equipped with lights that could be used to mark its location for vessels travelling on the river. It was not, how-

ever, equipped with navigational lights or equipment. During the time the defendant was in business the barge was never moved from its location of the bank of the Mississippi River and never underwent a United States Coast Guard marine inspection.

## II. *Discussion*

### A. Vessel status under the Jones Act/General Maritime Law and Section 5(b).

■ To qualify as a seaman under the Jones Act or General Maritime Law the plaintiff must show that he was permanently assigned to or performed a substantial part of his work aboard a vessel. *See Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (en banc). Similarly, for purposes of a § 905(b) vessel negligence claim under the LHWCA, a plaintiff must show that he was injured as a result of the negligence of a vessel. *See Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083 (5th Cir.1987) *cert. denied* —— U.S. —— 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). In this case the district court held that the barge on which the plaintiff was injured was, as a matter of law, not a Jones Act vessel, but that the barge *was* a vessel for § 905(b) purposes. Consequently, the district court granted summary judgment for the defendant on the plaintiff's Jones Act claim but denied summary judgment on the plaintiff's § 905(b) claim.

We have consistently held "that dry docks and analogous structures whose primary purpose is to provide a work platform, even if the structures are afloat, are not Jones Act vessels as a matter of law." *Bernard v. Binnings Construction Co., Inc.*, 741 F.2d 824, 830 (5th Cir.1984). *See, also, Watkins v. Pentzien, Inc.*, 660 F.2d 604 (5th Cir.1981) and *Waguespack v. Aetna Life & Casualty Co.*, 795 F.2d 523 (5th Cir.1986). In *Bernard* the court noted that:

A review of ... [decisions holding that floating work platforms are not vessels] indicates three factors common to them: (1) the structures involved were constructed and used primarily as work plat-

forms; (2) they were moored or otherwise secured at the time of the accident; and (3) although they were capable of movement and were sometimes moved across navigable waters in the course of normal operations, any transportation function they performed was merely incidental to their primary purpose of serving as work platforms. *Bernard*, 741 F.2d at 831.

■ The barge at issue in this case was used primarily as a work platform. Additionally, it was moored at the time of the accident; and any transportation function it performed was merely incidental to its primary purpose of serving as a work platform. It was not, however, constructed as a work platform. Nonetheless, the district court correctly concluded that the barge was not a vessel for Jones Act purposes. *Bernard* did not attempt to set forth minimum criteria necessary to place a floating structure outside the scope of the definition of "vessel" under the Jones Act. Rather, it merely listed criteria common to structures previously found not to be Jones Act vessels. To require that a structure meet each criterion in order to qualify as a non-vessel under the Jones Act would result in the conclusion that two identical structures engaged in identical work, one of which was constructed as a work platform and one constructed as a barge, had different vessel status under the Jones Act. We do not believe that such an absurd result is required by *Bernard*. We therefore hold that a structure may be a non-vessel for Jones Act purposes even if it fails to meet each criterion noted in *Bernard* and affirm the district court's conclusion that the barge was not a Jones Act vessel.

■ In assuming that the barge was a vessel under § 905(b), the district court relied on our decision in *Burks v. American River Transportation Company*, 679 F.2d 69, 75 (5th Cir.1982). In *Burks* we held that the definition of vessel set forth in Title 1 of the United States Code, § 3, provides the meaning of vessel "as the term is used in the LHWCA." This section states: "The word 'vessel' includes every

description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water."

Had this holding been our last pronouncement on the definition of the term "vessel" as used in the LHWCA, the district court's ruling that the barge was a vessel under § 905(b) would have been sustainable. Before trial in this case, however, we handed down our decision in *Davis v. Cargill, Inc.*, 808 F.2d 361, 362 (5th Cir.1986). In *Davis* we held that for purposes of § 905(b), "As a matter of law, a floating dry dock is not a vessel *when it is moored and in use as a dry dock.*" (citations omitted) (emphasis in original)

> In reaching this conclusion we stated: Although the plaintiff was injured while on a work platform and not a dry dock, the similarities between the two compel our holding that this platform, like a moored dry dock used for that purpose, is not a vessel within the meaning of § 905(b). *According to the affidavits submitted to the district court by the defendants, the platform was originally a navigable surplus dry cargo barge. It has since been converted for use as a permanently moored platform from which painting and sandblasting services are provided to barges and is no longer designed or used for navigation. The platform is anchored to the riverbed, and is moved only once or twice a year to compensate for tide changes, and even then, ... cannot be moved without the assistance of motorized vessels. The district court therefore properly granted summary judgment in favor of the defendants on the ground that the work platform on which the plaintiff was injured was not a 'vessel' within the meaning of § 905(b)."* Id. at 362. (emphasis added)

The similarities between the *Davis* case and the instant case are many and obvious. The barge in this case, like the platform in *Davis*, was originally a navigable barge. Both were firmly moored to provide painting services, were not used for navigation, were seldom moved, and when moved required the assistance of a motorized vessel.

Therefore, under *Davis* it is clear that the barge on which the plaintiff was injured was not a vessel within the meaning of § 905(b).

Further, before the entry of judgment in this case we had issued our opinion in *Richendollar v. Diamond M Drilling Co.,* 819 F.2d 124, 125 (5th Cir.1987) (en banc), in which we held that "in order for a waterborne structure to qualify as a 'vessel' under § 905(b), it must be a vessel for purposes of maritime jurisdiction." As is noted above, the barge in this case is not a vessel under general maritime law. Consequently, under our holding in *Rosetti* it cannot be a vessel for purposes of § 905(b). The district court, therefore, erred in denying the defendant's motion for summary judgment on the plaintiff's § 905(b) claim.

Because we find that the district court erred in denying the defendant's motion for summary judgment, we need not consider the plaintiff's contention that the court erred in granting the defendant's Rule 41(b) motion to dismiss. The judgment of the district court is, therefore,

AFFIRMED.