620 So.2d 355 (1993)
Davis EBANKS, Jr. and Lisa Ebanks
v.
RESERVE MARINE ENTERPRISES, INC.
No. 93-CA-154.
Court of Appeal of Louisiana, Fifth Circuit.
May 25, 1993.
*356 Joseph W. McKearn, New Orleans, for plaintiffs-appellants.
Eavelyn T. Brooks, David Shaw, New Orleans, for defendant-appellee.
Before BOWES, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
This is an appeal by Davis Ebanks, Jr., plaintiff-appellant, from a summary judgment dismissing his suit for damages under general maritime law, the Jones Act, and section 905(b) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). Because we agree with the trial judge's conclusion that the barge upon which Ebanks was allegedly injured was not, as a matter of law, a vessel, and thus that the threshold requirement for recovery under the above laws was not met, we affirm the judgment.
The uncontested facts upon which the trial judge based his judgment are these. Davis Ebanks, Jr. was employed as a crane operator by Reserve Enterprises, Inc. Under a service agreement with Louis Dreyfus Corporation, Reserve assigned Ebanks to operate a crane mounted on a barge. This crane barge was owned by Dreyfus and used as a cover station in its grain shipping operation on the Mississippi River. The primary function of the crane barge was to remove the covers of grain barges during unloading operations. To accomplish this task, the crane barge was placed near the river bank and two spuds were driven into the river bottom to hold it in place. The grain barges were then brought along side and their covers were lifted off by the crane and stored on the crane barge deck until loading or unloading was completed, at which time the covers were replaced by the crane. The only time that the crane barge was moved while in this routine service was when the level of the river fluctuated. When the river fell, the spuds would be pulled up by the crane and the barge would be moved by a tug boat further out into the stream, where the spuds would then again be driven into the bed. When the river rose the same procedure would be followed, but moving the barge toward the shore.
The barge had no kitchen, living quarters, navigation lights, or any means of self-propulsion. Its attachment to the shore was by way of a cat-walk by which workers would reach it.
It was also shown that on a few occasions during the year proceeding plaintiff's alleged injury, the crane barge was unmoored and towed to other locations up to 1500 feet from its usual position, where it was then used for other incidental tasks. On one of these occasions it was used for perhaps two weeks to remove old decking from a wharf. On another, it was used to lift an engine out of a tug boat, place it on shore, and then lift a new engine into the tug. On yet another, it was used to lift a gangway which had apparently fallen on a tug boat. Finally, on a few occasions it was used to pick up assorted motors, winches and pumps off the shore and place them on various other vessels.
A succinct summary of the law applicable here is found in Ducrepont v. Baton Rouge Marine Enterprises, Inc., 877 F.2d 393, 395 (5th Cir.1989), where the court stated that:
To qualify as a seaman under the Jones Act or General Maritime Law the plaintiff must show that he was permanently assigned to or performed a substantial part of his work aboard a vessel. Similarly, for purposes of a 905(b) vessel *357 negligence claim under the LHWCA, a plaintiff must show that he was injured as a result of the negligence of a vessel. (citations omitted)
Therefore, for plaintiff here to prevail under any of the above theories it must be established that a "vessel" was involved in his alleged injury.
As to the Jones Act claim, it is settled law that dry docks and analogous structures whose primary purpose is to provide a work platform, even if they are afloat, are not Jones Act vessels as a matter of law, Ducrepont, supra. In making this determination, the courts have generally looked to three factors, i.e. 1) was the structure constructed and used primarily as a work platform; 2) was it moored at the time of the accident; and 3) although capable of movement and sometimes moved in normal operations, was any transportation function merely incidental to its primary purpose of serving as a work platform, Bernard v. Binnings Construction Co., Inc., 741 F.2d 824 (5th Cir.1984). Further, in Ducrepont, supra, the court emphasized that even where a structure had not been built as a work platform, it should be considered as such where that is its present use and the other above criteria are also met.
In the present matter, it is clear that the crane barge is not a Jones Act vessel. There is no question that the structure was being used primarily as a stationary work platform, and that it was moored to the river bottom, via the spuds, at the time of plaintiff's injury. Third, although the barge was movable, and was sometimes moved, the only arguable transportation function which it served was to occasionally pick up various pieces of equipment from the bank and place them on floating vessels. Such use was clearly incidental to its primary purpose of serving as a moored cover station.
As to the 905(b) claim, "as a matter of law, a floating dry dock is not a vessel when it is moored and in use as a dry dock," Davis v. Cargill, Inc., 808 F.2d 361, 362 (5th Cir.1986). In Davis, the structure involved was originally a navigable cargo barge which had been converted to a work platform. It was anchored into the river bed and moved once or twice a year to compensate for fluctuations in the water level, and was incapable of being moved without assistance of a tug boat. In Ducrepont, supra, the structure was also originally a navigable barge which had been converted to a work platform. It was moored to the shore by wires, and was on occasion moved by tugboat to adjust to fluctuations in the water level. In both the above cases, the structure was found not to be a vessel for 905(b) purposes.
In the present case, the crane barge at issue is almost indistinguishable from the structures in the above cases. Plaintiff urges to the contrary, that because the barge may have been re-spudded some 35 to 40 times (which number he asserts by way of affidavit) to adjust for changes in the water level during one year, this case is distinguishable from Cargill and Ducrepont, where movement was "twice a year" or occasionally. In our opinion the issue is not the frequency of the re-spudding, but rather its purpose, as here, to keep the barge afloat at a proper water depth for its purposes. To rule otherwise would mean that structures on frequently fluctuating rivers would be deemed vessels, while similar ones on more placid waters would be deemed non-vessels. We decline to countenance such an anomaly in the law, and therefore reject plaintiff's argument.
The more difficult question is whether the occasional movement and uses of the crane barge for purposes unrelated to its primary function as a cover station would transform it into a vessel under section 905(b). In Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38 (La.1990), the court stated that in the United States Fifth Circuit, the test for vessel status in 905(b) actions is the capability test in 1 U.S.C. § 3, as modified in Ducrepont, supra, and cases there cited. A vessel as defined in 1 U.S.C. § 3, "includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." Our understanding of Ducrepont, and related cases, *358 is that a structure, although built and used originally as a 905(b) vessel, may be deemed a non-vessel when its primary use becomes that of a work platform which is firmly moored and seldom moved. Thus, the phrase "capable of being used, as a means of transportation on water" has been interpreted in the context of the regular use to which a structure is put, rather than that of some use for which it might theoretically be capable. It has further been interpreted in the context of the structure's use at the time of the injury.
In the present case, there is no dispute that plaintiff's alleged injury occurred while the barge was spudded into the river bottom in its customary location, and while it was functioning as a stationary work platform or cover station. In these circumstances we are unable to distinguish this matter from Ducrepont, supra, and we must therefore affirm the trial judge's conclusion that the crane barge was not a vessel for 905(b) purposes.
As shown above, there is no dispute as to any material fact going to the issue of whether the crane barge is or is not a vessel. All of the facts establish that it is not, and plaintiff has thus failed to establish a threshold requirement for application of any of the laws under which he seeks recovery. We therefore affirm the judgment of the district court in favor of defendants.
AFFIRMED.