THOMAS E. JOHNSON, Plaintiff-Appellant, v. ADM/GROWMARK RIVER SYSTEMS, INC., Defendant-Appellee.

Fifth District    No. 5—97—0236

Opinion filed April 3, 1998.

Gail Gaus Renshaw, of Lakin Law Firm, of Wood River, for appellant.

Daryl F. Sohn, of Goldstein & Price, L.C., of St. Louis, Missouri, for appellee.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

In this case brought under the Jones Act (46 U.S.C.A. § 688 (West Supp. 1997)), we are asked to determine whether the circuit court of Pulaski County properly entered summary judgment in favor of the defendant, ADM/Growmark River Systems, Inc., and against plaintiff, Thomas E. Johnson, finding as a matter of law that plaintiff was not a "seaman" within the meaning of the Jones Act because he had no connection to a "vessel in navigation."

■ The Jones Act provides a cause of action in negligence to any "seaman" who suffers personal injury in the course of his employment. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 132 L. Ed. 2d 314, 328, 115 S. Ct. 2172, 2183 (1995). The Jones Act, however, does not define the term *seaman*, and the question often arises whether a maritime employee is a "seaman," who is entitled to recovery under the generous provisions of the Jones Act, or a land-based maritime worker, who is entitled to recovery only under the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C.A. § 901 *et seq.* (West 1986)). The LHWCA provides scheduled compensation, and the exclusive remedy, for injury to a broad range of land-based maritime workers. *Chandris*, 515 U.S. at 355, 132 L. Ed. 2d at 329, 115 S. Ct. at 2183.

Drawing the distinction between those maritime workers who should qualify as seamen under the more generous provision of the Jones Act and those who should not has been the source of much litigation (*Chandris*, 515 U.S. at 356, 132 L. Ed. 2d at 329, 115 S. Ct. at 2184), and it is the source of the litigation before us in this appeal. What is clear, however, is that under the Jones Act the term *seaman* does not include land-based workers. *Chandris*, 515 U.S. at 358, 132 L. Ed. 2d at 331, 115 S. Ct. at 2185.

> "With the passage of the LHWCA, Congress established a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seamen." *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 347, 112 L. Ed. 2d 866, 877, 111 S. Ct. 807, 813 (1991).

While the Jones Act itself does not define who constitutes a seaman for its purposes, the courts have attempted to give some guid-

ance. In *Chandris*, 515 U.S. at 368, 132 L. Ed. 2d at 337, 115 S. Ct. at 2189-90, the Supreme Court found two essential requirements for seaman status: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission and (2) a seaman must have a connection to a vessel in navigation that is substantial in terms of both its duration and its nature. It is the second element that the circuit court of Pulaski County found lacking in the case at bar. Because that court found as a matter of law that plaintiff was not employed on a "vessel in navigation" and therefore was not a seaman, it granted summary judgment in favor of defendant.

■ The question whether an employee is a seaman within the meaning of the Jones Act is a mixed question of law and fact. *Chandris*, 515 U.S. at 369, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190. When the underlying facts are established and the rule of law is undisputed, the issue is whether the facts meet the statutory standard. *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 356, 112 L. Ed. 2d 866, 883, 111 S. Ct. 807, 818 (1991). Because the statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard. *Chandris*, 515 U.S. at 369, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190. Then, if reasonable persons, applying the proper legal standard as defined by the court, could differ as to whether an employee was a seaman, it is a question of fact for the jury. *Chandris*, 515 U.S. at 369, 132 L. Ed. 2d at 338, 115 S. Ct. at 2190. The underlying inquiry whether a vessel is or is not "in navigation" for Jones Act purposes is a fact-intensive question that is normally for the jury to decide, not the court. *Chandris*, 515 U.S. at 373, 132 L. Ed. 2d at 340, 115 S. Ct. at 2192. Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion. *Chandris*, 515 U.S. at 373, 132 L. Ed. 2d at 340, 115 S. Ct. at 2192. Nonetheless, summary judgment is mandated where the facts and the law will reasonably support only one conclusion. *Wilander*, 498 U.S. at 356, 112 L. Ed. 2d at 883, 111 S. Ct. at 818; *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 137 L. Ed. 2d 800, 117 S. Ct. 1535 (1997).

Thus, while the question of whether a person is a seaman is normally a question of fact for the jury, the issue may be resolved by summary judgment where the undisputed material facts establish as a matter of law that an individual is not a Jones Act seaman. *Snelling v. Elmer Logsdon River Construction Co.*, 120 Ill. App. 3d 80, 83 (1983). Of course, we review the decision of the trial court *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

The material facts presented to the trial court are undisputed. Defendant operated a facility on the Ohio River. The facility handled grain pellets and other grain products. Products came into defendant's facility by railcar and truck. They were then carried by conveyor belt out to defendant's dock on the river, where they were loaded into barges belonging to numerous different companies.

Defendant's dock consisted of two floating barges that were moored between three round, cylindrical "cells" driven into the river bottom. These barges originally had been constructed to transport cargo over water and had previously been used for that purpose. They had been retired from service because they were old and were no longer capable of carrying cargo. The hulls of the barges were old and worn, and the cost to restore them to a condition suitable to carry cargo would have exceeded the value of the barges.

The barges floated between the cells so that they could ride up and down with the rise and fall of the river. However, steel framework welded to the ends of the barges and attached to the cells prevented them from moving upstream, downstream, or from side-to-side, and they could not float away from the loading area. The barges provided a flat surface for the various customers' barges to be tied to for loading, and they made it safer for defendant's employees to get on and off the customer barges from the dock at various stages of the river.

In addition to the steel framework welded to the ends of the barges to hold them in place, defendant had made numerous modifications to the barges. The doors on top of the cargo compartments, into which cargo would normally have been loaded, had been welded shut so that no one could fall inside and be injured. A yellow steel catwalk had been constructed between the two barges so that defendant's employees could walk from one barge to the other. A cable pulley system was welded to the deck of the barges so the tower operator could adjust the position of customer barges during loading. A trailer had been mounted on top of one of the barges to store tools. If defendant had wanted to restore the barges for use to carry cargo, it would have been necessary to remove all of these modifications.

Defendant had never used the barges to carry cargo. On only two occasions had the barges ever been moved. At one time, the river had flooded and caused the barges to float up near the top of the mooring cells, which would have allowed the barges to drift away. Therefore, the barges had been temporarily moved away. On a second occasion, defendant had one of the barges removed from its mooring for repairs. Neither barge was used to carry any cargo on either of these occasions. The beams securing the barges into place on the mooring cells

had once been welded to the ends of the barges, but after having to remove the barges from the cells, they were modified so that they were held on with removable pins to facilitate easy transportation.

The barges were not essential to the process of loading grain into customer barges, as defendant had continued loading operations at the time when one of the barges had been removed. The barges simply provided a platform on which the workers could safely stand while working on the customer barges.

Defendant's facility was operated by a total of about 21 employees. The facility operated seven days per week on three shifts. Each shift had a tower operator (who ran the conveyor controls), a lead man, and two laborers. The time to load each customer's barge varied from three hours to as much as eight hours. Roughly 80% of the customers' barges were loaded with pellets; the rest were loaded with grain.

When pellets were to be loaded, one or both of the laborers would go down to the dock to open covers on the customer's barge and prepare it for loading. This took roughly 15 to 30 minutes. The laborers would then go to a building on land called the pit, where they would unload rail cars of pellets that were carried on the conveyor out to the dock. Once the tower operator called to say the customer's barge was full, the two laborers would return to the dock to close the covers on the barge and clean up any spills. This took approximately 30 minutes.

When grains were being loaded, the procedure was the same except that one of the laborers would go down to the dock to record the draft marks on the four corners of the customer's barge. This might take only a few minutes, or it might require one of the laborers to remain at the dock during the entire loading process.

Different customer barges came to the dock every day for loading. Defendant had no tug of its own, and all customer barges were brought to the dock by a tug service. Plaintiff never rode on this tug in the course of his employment, nor did plaintiff ever ride on any other kind of boat in the course of his employment.

The plaintiff was employed as a laborer by defendant from July 1990 until his injury on December 4, 1990. Plaintiff's foot was injured when a customer's barge cover fell on it. The plaintiff testified in his deposition that he spent about 90% of his work time on the barges. Some of plaintiff's coworkers testified in their depositions that plaintiff spent about 80% to 90% of his work time on land unloading rail cars, operating the locomotive, and performing other duties. The circuit court found that this factual dispute was immaterial and did not prevent the grant of summary judgment because even if the

plaintiff spent as much time on the barges as he claimed, the barges were not vessels in navigation for purposes of the Jones Act.

In its motion for summary judgment, filed December 23, 1996, defendant argued that plaintiff was not a seaman within the meaning of the Jones Act because he did not have a substantial connection to any vessel in navigation. Defendant argued that the barges were permanently moored, never travelled on the river, and were used essentially as a stationary, floating dock. Accordingly, defendant argued, the barges were not "vessels in navigation" within the meaning of the Jones Act. Defendant argued that many of plaintiff's duties were land-based and that when he worked over water, his work was that of a classic longshoreman assigned to help load various vessels.

Plaintiff countered that a jury could reasonably find that the barges are vessels in navigation. Plaintiff argued that the barges were clearly vessels and that they were in navigation because they were floating on a navigable waterway. Plaintiff argued that the barges had at one time carried cargo, that they were still capable of carrying cargo with some modification, and that they were only temporarily moored. Accordingly, plaintiff argued, a jury could reasonably find that the barges were vessels in navigation and that plaintiff was a seaman within the meaning of the Jones Act.

■ The circuit court found as a matter of law that the barge on which plaintiff was injured was not a vessel in navigation. Because the circuit court found that no reasonable jury could find plaintiff to be a seaman within the meaning of the Jones Act, it granted summary judgment for defendant. For reasons that follow, we affirm.

Courts have long held that floating work platforms are legally indistinguishable from floating dry docks and, at least while secured to land, are not vessels for purposes of the Jones Act. *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999, 1000 (5th Cir. 1973). In *Cook*, the court pointed out that neither the capability of movement on water nor the fact that the platform had been moved through navigable waters in the past establishes that the platform, while secured to land and in service, is a vessel. 472 F.2d at 1001. As a matter of law a floating dry dock is not a vessel when it is moored and in use as a dry dock. 472 F.2d at 1001.

In *Cook*, the plaintiff was injured while working on defendant's construction platform, consisting of a flat-deck barge that was secured to defendant's dock by ropes. The barge was used for the construction of fabricated concrete barges and was occasionally moved on the water for launching of the fabricated concrete barge and to pick up materials on defendant's dock. A summary judgment in favor of the defendant was affirmed where the work-platform barge was found as

a matter of law not to be a vessel in navigation within the meaning of the Jones Act.

In *Ducrepont v. Baton Rouge Marine Enterprises, Inc.*, 877 F.2d 393 (5th Cir. 1989), plaintiff was injured on a barge used as a stationary work platform by defendant/employer, who was in the business of cleaning and repairing barges for a variety of companies. The work barge had originally been designed as a cargo barge but then was moored to shore by wires and was used as a work platform. It was occasionally tugged a short distance from shore due to the water level. The court affirmed a summary judgment in favor of defendant on the ground that, as a matter of law, the barge was not a vessel in navigation within the meaning of the Jones Act. *Ducrepont*, 877 F.2d at 394. The court stated, "We have consistently held 'that dry docks and analogous structures whose primary purpose is to provide a work platform, even if the structures are afloat, are not Jones Act vessels as a matter of law.'" 877 F.2d at 395, quoting *Bernard v. Binnings Construction Co.*, 741 F.2d 824, 830 (5th Cir. 1984). The fact that the barge was not originally constructed as a work platform but as a cargo-carrying barge does not mandate that the barge is a vessel for Jones Act purposes where it is used as a work platform and not to carry cargo. 877 F.2d at 395.

In *Ellender v. Kiva Construction & Engineering, Inc.*, 909 F.2d 803 (5th Cir. 1990), plaintiff was injured while working on a four-barge work platform. The barges were tied together and were moved around the construction site with a tug. They were not otherwise moved. A summary judgment for defendant/employer was affirmed because the barges were found as a matter of law not to constitute a vessel within the meaning of the Jones Act.

These holdings are not confined to the fifth circuit. In *DiGiovanni v. Traylor Brothers, Inc.*, 959 F.2d 1119 (1st Cir. 1992), plaintiff was injured while working on a barge at a bridge construction sight. The barge was used to hold a crane. It was positioned about the bridge and was moved away from the piling at night for safety. The barge had been towed by a tug to the jobsite. The court distilled from various cases that mere floating is not enough to make something a vessel, nor is capability of movement across navigable waters. *DiGiovanni*, 959 F.2d at 1123. The court stated that the test is whether the structure is used primarily for the transportation of cargo or persons across navigable waters or was, at the time of injury, engaged in navigation. 959 F.2d at 1123. The court pointed out that the current use of a structure, and not its previous purpose, should be the test of vessel status. 959 F.2d at 1123. The court concluded that if a barge or other float's purpose or primary business is not navigation or com-

merce, then workers assigned thereto for its shore enterprise are to be considered seamen only when it is in actual navigation or transit. 959 F.2d at 1123. The court found that the barge on which plaintiff was injured had not transported anything for a month and was simply moved around the construction site. It was therefore not engaged in navigation or commerce and was used primarily as a stationary work platform. It was not a vessel within the meaning of the Jones Act.

Although a myriad of cases discuss the issue of what constitutes a vessel in navigation for Jones Act purposes, it serves no useful purpose to discuss them all herein. Suffice it to say that plaintiff has cited no case in which a stationary work platform which is never used to transport cargo or passengers over navigable waters, such as in the case at bar, has been held to be a Jones Act vessel.

There is no question in the case at bar that the barge on which plaintiff was injured had never, in anyone's memory, been used by defendant or its predecessor in interest to transport cargo, equipment, or passengers. It is further undisputed that, although the barge had originally been designed to transport cargo, defendant had so modified it that it was no longer capable of doing so. Plaintiff argues that the barge was only temporarily moored and therefore still constituted a vessel within the meaning of the Jones Act. To the contrary, we think the evidence leads only to the conclusion that the barge was permanently moored, even if not irrevocably moored. There was no evidence of any intent on the part of the defendant to remove the barge from its mooring or to use it for any purpose other than a permanent, stationary work platform. As the cases cited above have held, the fact that the barges had in the distant past been used to transport cargo is not dispositive, as it is their current use which determines their status. In their current use, the barges are no more than extensions of land.

Plaintiff argues that once a vessel is in navigation it does not easily lose this status and that a vessel does not cease to be a vessel when she is not voyaging. However, the cases plaintiff relies upon for these propositions are completely inapposite. For example, in *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 1 L. Ed. 2d 404, 77 S. Ct. 415 (1957), plaintiff was a deckhand on a dredge which the court acknowledged was not frequently in transit. The dredge was anchored to the shore at the time of plaintiff's injury. The court pointed out: "[E]ven a transoceanic liner may be confined to berth for lengthy periods, and while there the ship is kept in repair by its 'crew.' There can be no doubt that a member of its crew would be covered by the Jones Act during this period ***." *Senko*, 352 U.S. at 373, 1 L. Ed. 2d at 408, 77 S. Ct. at 417. Clearly, the work barges in the case at bar

are not analogous to the dredge, which sometimes cruised, or a transoceanic liner, which also cruises. The work barges in the case at bar had never been used by defendant for transportation, and there was no intention on the part of defendant to ever so use them in the future.

Another case relied on by plaintiff, *McCarthy v. The Bark Peking*, 716 F.2d 130 (2d Cir. 1983), has no bearing on the case at bar. That case involved the LHWCA and did not implicate the Jones Act in any way. Even the court in *McCarthy* acknowledged that "cases decided under the Jones Act [citation] have looked to a different test in determining what is a vessel for Jones Act purposes." 716 F.2d at 134 n.2.

The evidence in this case is undisputed, and it leads to only one reasonable conclusion: the barge on which plaintiff was injured is not a "vessel in navigation" within the meaning of the Jones Act. Plaintiff does not qualify as a "seaman" and is not entitled to recover under the Jones Act. The trial court properly entered summary judgment in favor of defendant on plaintiff's Jones Act claim.

For the foregoing reasons, the judgment of the circuit court of Pulaski County is affirmed.

Affirmed.

HOPKINS and CHAPMAN, JJ., concur.