**Mary MARTIN**

v.

**BOYD GAMING CORPORATION, et al**

**No. CIV.A.02–3010.**

United States District Court,
E.D. Louisiana.

March 26, 2003.

Eric Michael Daigle, Eric M. Daigle, Attorney at Law, New Orleans, for Mary Martin, plaintiff.

James Melvin Jacobs, John Herr Musser, V, Murphy, Rogers & Sloss, New Orleans, Peter Brooks Sloss, James Melvin Jacobs, Murphy, Rogers & Sloss, New Orleans, for Boyd Gaming Corporation dba Treasure Chest Casino MV, Treasure Chest Casino, LLC, defendants.

*ORDER AND REASONS*

FELDMAN, District Judge.

Before the Court is defendants' Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

*Background*

Mary Martin seeks damages under the Jones Act, 46 U.S.C.App. § 688, for unseaworthiness of the M/V TREASURE CHEST CASINO (TREASURE CHEST) and for the defendants' negligence, for injuries she sustained on October 7, 2001,

when she slipped and fell in grease or cooking oil which had leaked from garbage bags on the loading dock of the TREASURE CHEST. As a result of the accident, the plaintiff asserts that she has sustained permanent injuries to her neck, back, and arms. She seeks damages for past, present, and future lost wages, medical expenses, lost fringe benefits, pain and suffering, mental anguish, loss of ability to enjoy life, and disability.

Martin worked as a cocktail waitress on the TREASURE CHEST from February 6, 1995, until October 7, 2001, when she had her accident. The TREASURE CHEST is a riverboat casino which was built in 1994 to replicate a 19th century Louisiana steamboat. The TREASURE CHEST is 213.5 feet in length, paddle-wheel driven, and carries a valid Certificate of Inspection from the United States Coast Guard. Pursuant to the cruise requirement for all riverboat casinos in Louisiana, which was in effect prior to the 2001 Louisiana legislative session, the TREASURE CHEST conducted gaming cruises from September 1994 until March 31, 2001. During the 2001 legislative session, the Louisiana legislature abolished the cruise requirement for all riverboat casinos, to take effect on April 1, 2001, in exchange for increased franchise fees from the casino operators. As of April 1, 2001, before plaintiff's injury, the TREASURE CHEST has conducted continuous gaming activities only while moored. Since April 1, 2001, the TREASURE CHEST has only moved from her mooring on Lake Pontchartrain for maintenance purposes on two evenings in June of 2002.[1]

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249–50, 106 S.Ct. 2505 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the Court

---

**1.** On June 4 and 5, 2002, the TREASURE CHEST closed for several hours each night and was moved approximately 200 feet from its moored location to allow for maintenance dredging at the berth. There were no patron, games dealers or cocktail waitresses aboard during these dredging operations.

must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## II. Application

The Jones Act confers a negligence cause of action on "[a]ny seaman who shall suffer personal injury in the course of his employment...." 46 U.S.C. § 688(a). "Seaman" is left undefined in the statute. The United States Supreme Court has established two essential requirements for seaman status: (1) the employee's duties must contribute to the function of the vessel or the accomplishment of its mission and (2) the employee must establish that she has an "employment-related connection to a vessel in navigation" that is "substantial in terms of its nature and duration." *Chandris, Inc. v. Latsis,* 515 U.S. 347, 368, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995). The Supreme Court articulated the purpose underlying the second prerequisite in *Chandris:*

> The fundamental purpose of the substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.
>
> *Id.*

Importantly, the Supreme Court in *Chandris* focused on "the essence of what it means to be a seaman," noting that "[t]he Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Id.* at 370, 115 S.Ct. 2172 (citation omitted).

At the heart of this seaman status dispute is the issue of whether the TREASURE CHEST is a vessel "in navigation." The plaintiff asserts that she entitled to seaman status because the TREASURE CHEST remains a vessel in navigation, although it is continuously moored, because it has the ability to conduct gaming cruises. The defendants contend that the TREASURE CHEST no longer is a vessel in navigation because it ceased conducting gaming cruises in April 2001, following the legislature's statutory authorization of dockside gaming. Because the TREASURE CHEST no longer conducts, or intends to conduct gaming cruises, the defendants assert that the plaintiff lacks the employment-related connection to a vessel in navigation mandated in *Chandris* to qualify as a Jones Act seaman. The Court agrees.

In *Pavone v. Mississippi Riverboat Amusement Corp.* the Fifth Circuit considered whether the BILOXI BELLE, an indefinitely moored floating dockside casino, constituted a vessel under the Jones Act or general maritime law. 52 F.3d 560 (5th Cir.1995). Relying on the "semi-permanently or indefinitely moored" status of the barge supporting the BILOXI BELLE, the Fifth Circuit held that, at the times of the plaintiffs' alleged accidents, the BILOXI BELLE was removed from navigation and constituted a mere "work platform." *Id.* at 570. Indeed, the Court reiterated the three common attributes of nonvessels: (1) the structure was constructed to be used as a work platform; (2) the structure is moored or otherwise secured at the time of the accident; and (3) although the platform is capable of movement, and is sometimes moved across navigable waters in the course of normal operations, any transportation function is merely incidental to the platform's primary purpose." *Id.* at 570 (citing *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290,

293–94 (5th Cir.1990)). Ultimately, the Fifth Circuit's analysis of putative vessels included, not only vessels used as work platforms, but also vessels that had been "withdrawn from navigation." *Id.* at 568. Importantly, it noted that the BILOXI BELLE was susceptible of being moved and was moved once after being converted into a casino but that such "one-time movement was purely incidental to the barge's primary purpose of physically supporting a dockside casino structure." *Id.*

Additionally, in *Ducrepont v. Baton Rouge Enterprises, Inc.*, 877 F.2d 393, 395 (5th Cir.1989), the appeals court wrote that the barge at issue was originally built to navigate and was used in navigation, but had ceased to navigate and therefore no longer constituted a vessel "in navigation" for Jones Act purposes. This Court inescapably notes that the TREASURE CHEST was also built to navigate, but ceased its transportation function on April 1, 2001, well before plaintiff's accident, and has moved only for maintenance purposes on two occasions. Such limited movement, was clearly incidental to TREASURE CHEST's primary function as a floating, but stationary, gambling casino. This "extremely limited transportation function is 'subordinate to its contrasting function' of providing dockside gaming." *Gremillion v. Gulf Coast Catering, Inc.*, 904 F.2d 290, 294, n. 9 (5th Cir.1990). Moreover, the defendants' two-year history of compliance and intent to comply with Louisiana law,

its Coast Guard Certificate of Inspection reflecting a "continuously moored" status, and intent to remain moored while engaging in its primary function of casino gambling is also telling. *See id.* at 293 ("[T]he intention of the owner to move the structure on a regular basis...and the length of time that the structure has remained stationary are also relevant to the inquiry").[2]

Accordingly, defendants' motion for summary judgment on seaman status is GRANTED.

---

2. The plaintiff cites *Dalleo v. Treasure Chest Casino, LLC*, C.A. No. 02–0229 (E.D.La. Nov. 21, 2002) as presenting the identical issue presented to this Court for summary judgment. Indeed, the same defendants moved for summary judgment on seaman status in that case, where the plaintiff was a games dealer on the TREASURE CHEST and was injured approximately a month prior to Martin. Although the defendants' motion was denied, Judge Fallon never assigned reasons for his decision. The case was ultimately settled and therefore the issue was never resolved on the merits. Moreover, the issues raised in some of the briefing in *Dalleo* have not been raised in this case and are not before the Court. In addition, the Court finds that the other cases cited by plaintiff are distinguishable from the facts of this case. Specifically, the cases cited by the plaintiff do not involve a casino vessel that has ceased to navigate. Instead, all of the vessels in the cases cited routinely left their docks to conduct various voyages.